STATE *vs.* CONCETTA GUARANERI \*
OCTOBER 29, 1937.
PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is an indictment charging the defendant with the crime of abortion. The case was tried

before a justice of the superior court sitting with a jury and resulted in a verdict of guilty. The defendant filed a motion for a new trial upon the usual grounds, which was denied by the trial court. The case is now before us solely on the defendant's exceptions to the rulings of the superior court admitting in evidence a hospital record of the Rhode Island Hospital, all other exceptions being expressly waived. These exceptions, numbered 1, 2 and 8 in the bill of exceptions, raise substantially the same question and therefore will be considered together.

At the time of the alleged offense, the defendant, a married woman, lived on Hartford avenue in the city of Providence. Testimony in behalf of the state was to the effect that the complaining witness was brought to the defendant's home on January 28, 1936, by the person responsible for her condition and that the defendant there performed an abortion. The defendant, admitting that the complaining witness had been at her home, firmly denied the charge.

Several police officers of the city of Providence testified that they found the complaining witness and the defendant in the defendant's house on Hartford avenue, and that on this occasion they took possession of certain instruments which were produced by the state at the trial and introduced in evidence. The two women were taken by the officers to police headquarters for questioning, and later the complaining witness was sent to the Rhode Island Hospital for treatment. She was discharged from that institution after two days as "improved" in condition.

Over the defendant's repeated objections, which are now represented by the above-mentioned exceptions 1, 2 and 8 of her bill of exceptions, the state was permitted to introduce in evidence the entire hospital record pertaining to the complaining witness while at the Rhode Island Hospital. This record consisted of a "Genecological History and Examination", doctor's notes, laboratory record, clinical chart, treatment notes, and a "Blood Wasserman", so-called.

The whole record, without deletion or suppression of impertinent matters, was allowed in evidence through the record clerk of the hospital. She testified that it was a fixed rule of the hospital to keep an individual record for each patient; that, although all these records were in her custody, she had no personal knowledge of their contents; and that they were compiled by the internes and nurses. Referring specifically to the hospital record of the complaining witness in this case, she further testified that, following the usual custom of the hospital, she believed that an interne, Norman Margolius, had questioned the patient, written the history and examined her; that this interne was no longer connected with the hospital, and that she did not know "where he is located." This witness did not even attempt to identify the handwriting on the gynecological history and doctor's notes as that of the interne, Margolius.

A close examination of the transcript in this case fails to disclose any attempt on the part of the state to find this interne and, with the exception of the statement from the hospital record-clerk that she did not know "where he is located", there is no evidence of his nonavailability as a witness. In the circumstances the defendant objected generally to the introduction in evidence of the entire hospital record and of the gynecological history in particular, on the grounds that such evidence violated the hearsay rule and also deprived her of the constitutional right to be confronted with the witnesses against her, as provided in art. I, sec. 10 of the Rhode Island constitution.

In the absence of statute, there is a conflict of authority on the use of the hospital records as independent evidence, although the weight of authority favors their admission under certain conditions. See note, 75 A. L. R. 378. The statute in this state which deals with hospital records relates to civil procedure only and is, therefore, inapplicable in criminal cases. P. L. 1928, chap. 1161.

In *Ribas* v. *Revere Rubber Co.*, 37 R. I. 189, this court held that, even without statute a hospital record is com-

petent and admissible in evidence as to all matters proper for inclusion in such a record, when the proper foundation has been laid, on the theory that it is a record kept in the regular course of business. When properly authenticated, a hospital record is admissible in evidence under this well-recognized exception to the hearsay rule only in so far as it relates to diagnosis, treatment and medical history of the case; but nothing therein contained is admissible as evidence which has reference to the question of liability.

If a proper foundation is laid for the admission of a hospital record and it is restricted to the purpose and within the limits for which it may properly be used, we see no good reason for excluding it as competent evidence in a criminal case. In allowing such evidence, however, a sharp distinction is to be drawn between entries which record details necessary or helpful for diagnosis and treatment and those which narrate events concerning the patient that have no medical connection with either diagnosis or treatment. The former entries are admissible in evidence under the exception to the hearsay rule, as being entries made in the regular course of business, while the latter remain pure hearsay and should be excluded.

Before a hospital record is admissible in evidence, it must affirmatively appear that it was a matter of duty to keep such a record in the regular course of the hospital's business, and the person whose duty it was to keep that record, if living, competent and within the jurisdiction, must testify that the entry was made in the regular course of business in his handwriting or under his immediate supervision. If the person who made the entries is dead, incompetent or beyond the process of the court at the time of trial, other witnesses may identify the record as to how and by whom it was kept. See *Ribas* v. *Revere Rubber Co.*, *supra*.

Applying these preliminary and necessary requirements of identification of the hospital record in the instant case, we find that the evidence before us completely fails to show

any excuse for the absence as a witness of the interne who made that record. A record of this kind, especially in a criminal case, should be properly identified before it can be admitted in evidence. When resort is had to evidence of this character, justice requires that a proper foundation be laid by proof that the person who made the record is dead or physically or mentally unable to testify, or out of the jurisdiction, or if his whereabouts are unknown, that diligent effort was made by the person offering such proof to locate him. In this case the state went no further than to show, through the record-clerk of the hospital, that she did not know where the interne was located and that he was no longer connected with the hospital. For all that appears in the transcript before us the interne may have been practicing medicine next door to the hospital itself. In the circumstances, the evidence falls far short of a proper identification of the hospital record to make it admissible in evidence.

Assuming, for the sake of discussion, that this hospital record was properly identified and admissible as evidence tending to show the physical condition of the complaining witness at the time of her admission to the hospital, it does not necessarily follow that all entries therein made are competent evidence against the defendant. The evidence shows that the complaining witness was taken to the hospital in the late afternoon or early evening of January 29, 1936. The gynecological history in this case contains the following statement: "One day prior to admission, Jan. 28, patient went to a female abortionist on Hartford Ave., who inserted rubber catheter, which was removed this A. M., and replaced by another." This statement, which is written in a bold hand on the first page of the hospital record where it can hardly escape the attention of even a casual reader, is clearly a narration of past events beyond the personal knowledge of the writer of that statement.

The state argues that technical error in the admission of evidence is harmless if the testimony so admitted is merely

cumulative in character, and that in the instant case the above quoted statement from the gynecological history was only repetition of what had already been testified to by the complaining witness. In support of this contention it cites *State* v. *Deslovers*, 40 R. I. 89; *State* v. *McAvoy*, 40 R. I. 437; *State* v. *Collins*, 24 R. I. 242. We are in accord with those cases, noting, however, that what was there said was predicated upon the proposition that the objectionable evidence, after a careful examination of all the evidence by this court, was found to be harmless under the special circumstances in each case.

In so far as the statement under consideration refers to the insertion and replacement of a surgical instrument, we cannot say that such reference was not properly in the hospital record as a necessary element for the purpose of diagnosis. The phrase "female abortionist", however, presents an entirely different proposition.

A close examination of the transcript fails to show what questions were asked the complaining witness on her admission to the hospital or what answers were actually given by her to whoever questioned her at that time. Excluding such matters as properly might form part of a hospital record, it is clear to us that whatever else the complaining witness may have said to the person who questioned her in the absence of the defendant was inadmissible in evidence by the state as part of its original case, even if that person had been produced as a witness at the trial. *Scott* v. *People*, 141 Ill. 195, 213.

The defendant was being tried on an indictment charging her with having committed the crime of abortion. The use of the words "female abortionist" in the hospital record, which reasonably might be given undue weight in the jury's mind merely because it was an official record of the hospital, tended to establish the commission of the crime for which the defendant was on trial and of which she was presumed to be innocent until proven guilty by competent evidence beyond a reasonable doubt.

We find that the word "abortionist" has the same meaning in law, in medicine and in common speech, and this probably explains our failure to discover any decided case in which this word has been defined. In Ballantine's Law Dictionary, it is defined as "one who practices the crime of producing abortions"; in Gould's Dictionary of Medicine, as "one who criminally produces abortions; especially as one who follows the business of producing abortions"; in Dorland's Medical Dictionary, as "one who makes a business of producing criminal abortions"; and in Webster's New International Dictionary, as "one who practices the producing of criminal abortions." In view of this situation, we cannot excuse the use of the word "abortionist" on the ground that it is a word of art, and, therefore, can have little or no effect on persons who are unacquainted with its technical meaning.

The phrase "female abortionist" in the hospital record introduces in evidence by means of clearly incompetent testimony the inference, at least, that the person therein referred to had previously performed criminal abortions, and that such person had the reputation of following the practice or business of producing criminal abortions. There is good authority to the effect that in a prosecution for abortion the state may show by competent evidence that the accused on other occasions had operated on other women, or held herself out as being able and willing to commit an abortion, in order to prove the purpose and intent of the accused in connection with the act charged. *Regina* v. *Dale,* 16 Cox C. C. 703; *Clark* v. *The People,* 224 Ill. 554; *People* v. *Hagenow,* 236 Ill. 514; *Commonwealth* v. *Corkin,* 136 Mass. 429. In fact it was done in the instant case through the testimony of one witness, the defendant conceding its admissibility as evidence but objecting on a ground that is not before us for consideration. Without expressing any opinion on this point, it is clear to us that such evidence, if admissible either with or without restrictions, cannot be added to or supported by an incompetent entry in a

hospital record. No authority holding otherwise has been cited by the state and we have found none.

It is our practice that in a criminal prosecution the state cannot produce evidence to show the character or reputation of the accused prior to the alleged crime, until the accused has himself put his character or reputation in issue. *State* v. *Ellwood,* 17 R. I. 763; *State* v. *Hull,* 18 R. I. 207. In the instant case, the defendant raised no such issue. The phrase under consideration strongly tends to show that the defendant was a woman of bad character in so far as abortions were concerned, and that her reputation was that of one who was in the business of producing criminal abortions. This cannot be done indirectly by the state through the medium of a hospital record.

It may well be, as the state contends, that the guilt of the defendant is established by the competent evidence in the case, but we cannot agree with its contention that the phrase "female abortionist" was merely cumulative testimony and, therefore, not prejudicial. The state must have had some purpose, undisclosed by the transcript before us, for insisting that the hospital record be allowed in evidence without eliminating therefrom a phrase that was prejudicial to the defendant. Since the hospital record was so allowed in evidence, the state cannot now avoid the prejudicial force and effect of that statement by contending that the defendant had been proven guilty by the other evidence in the case. We cannot measure the persuasive force or effect on the jury of the objectionable phrase, especially since it appears conspicuously in a hospital record that was clearly unauthenticated. Even if the hospital record had been properly authenticated, this phrase should have been suppressed or deleted as impertinent matter in such a record.

The defendant's contention that the admission in evidence of a hospital record, under any circumstances, violates her constitutional right to be confronted with the witnesses against her is without merit. This provision of the

constitution does not alter the rules of evidence, but only secures to the defendant the right to be confronted by the witnesses who are produced to prove such matters as are competent evidence against her under settled principles of law. *State* v. *Waldron,* 16 R. I. 191; *State* v. *Jeswell,* 22 R. I. 136; *State* v. *Ackerman,* 49 R. I. 482.

For the reasons stated, we sustain defendant's exceptions 1, 2 and 8, and the case is remitted to the superior court for a new trial.

CONDON, J., dissenting. I cannot subscribe to the view that the admission of the hospital record under the circumstances in this case was reversible error. I concur in the view that it was inadmissible, but as there was other evidence overwhelmingly tending to prove the accused guilty of the crime charged, the admission of the record did not, in my opinion, prejudice her. To justify upsetting this trial because of the erroneous admission of one item of evidence not singly essential to the proof of the crime charged, it must be clear that this inadmissible evidence probably caused a prejudice in the minds of the jury, which deprived the defendant of a fair and impartial trial. It is because I am firmly of the opinion that the defendant did not suffer any such deprivation that I am, with extreme reluctance, constrained to differ with my associates and express this dissent.

*John P. Hartigan,* Atty Gen., *Lyman Lisker,* Asst. Atty Gen., for State.

*Rosenfeld & Hagan, Charles J. McCabe,* for defendant.