280 A.2d 320.

STATE *vs.* DANIEL JAMGOCHIAN.

AUGUST 3, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a criminal complaint charging the defendant with driving "a motor vehicle upon a highway of this State * * * without having a valid license * * *" in violation of G. L. 1956 (1968 Reenactment) §31-11-18(a).[1] The complaint, dated March 20, 1968, was issued by the clerk of the then District Court of the Eighth Judicial District upon the complaint of a captain of the Police Department of the City of Cranston. On May 15, 1968, the defendant filed a plea in abatement alleging, *inter alia,* that the complaint was based on hearsay and that the complainant received his information through informants whose previous reliability had not been determined. On April 1, 1969, the state proceeded to a hearing on the defendant's plea in abatement before a justice of the Superior Court without having demurred or replied to the allegations in defendant's plea in abatement.

After the hearing the trial justice overruled the plea in abatement and, thereafter, on September 19, 1969, the case proceeded to trial de novo before another justice of the Superior Court. The defendant was found guilty as

---

[1]Section 31-11-18(a) reads as follows:

"Any person who drives a motor vehicle on any highway of this state after his application for a license has been refused, or at a time when his license to operate is suspended, revoked or cancelled, shall be guilty of a misdemeanor."

charged.[2]  The case is here on defendant's bill of exceptions.  He has briefed and argued them under six points.  For convenience we shall treat them in like manner.

## I

Under exception 1 defendant challenges the ruling of the trial justice overruling his plea in abatement.  The defendant argues in substance that since the state failed to demur or reply to the allegations in his plea in abatement, the facts alleged therein must be taken as true; that accordingly the allegation therein of an invalid complaint must be taken as true; and that in the circumstances the complaint should be dismissed.  We do not agree.

It is true that in *State* v. *Johnson*, 55 R. I. 350, 181 A. 412, this court held that the state should take issue on a plea in abatement by demurrer or replication.  But that case is of no help to defendant.  In the case at bar, at the hearing on the plea in abatement, the trial justice treated the plea as though the state had filed a demurrer, and, after the hearing, the trial justice overruled the plea in abatement.  Assuming without deciding that defendant's contentions are correct, the fact that the complaint may have been invalid did not preclude trial of the defendant for the offense with which he was charged.  See *State* v. *Swilling*, 246 So. C. 144, 142 S.E.2d 864.  Compare *Walker* v. *Langlois*, 104 R. I. 274, 283-84, 243 A.2d 733, 738.  Exception 1 is overruled.

## II

Exception 2 has been neither briefed nor argued in accordance with our Rule 15 and is therefore deemed to be waived.  *Clarke* v. *Sullivan*, 103 R. I. 177, 235 A.2d 668; *Devereaux*

---

[2]It appears from the transcript of the hearing on the merits that the complainant received the information of the violation, with which defendant was charged, from one of his subordinate officers who had stopped defendant on Park Avenue in the city of Cranston. A complaint based on such information is valid. *State* v. *Diggins*, 92 R. I. 341, 168 A.2d 469.

v. *Kelly,* 106 R. I. 499, 261 A.2d 843. See also *State* v. *Carufel,* 106 R. I. 739, 263 A.2d 686.

### III

The trial justice admitted in evidence, over defendant's objections, the folder of defendant's registry of motor vehicle record and letters sent to him notifying him of the suspension of his operator's license. Under exceptions 3, 4 and 7, defendant argues that the trial justice erred in admitting these records. He contends that G. L. 1956 (1969 Reenactment) §9-19-13[3] precludes business records kept in the regular course of business from being admitted in evidence in criminal cases. He relies on the language of the statute which expressly authorizes use of business records in civil proceedings.[4] He also relies on the decision of this court in *State* v. *Guaraneri,* 59 R. I. 173, 194 A. 589.

In the *Guaraneri* case, which dealt with the admissibility of hospital records in a criminal case, the court held that P. L. 1928, chap. 1161, the precursor of our present §9-19-13, "relates to civil procedure only and is, therefore, inapplicable in criminal cases." *Id.* at 176, 194 A. at 591. However, the court said that, if a proper foundation were laid, certain hospital records would be admissible in a criminal case under the exception to the hearsay rule, as being entries made in the regular course of business. *Id.* at 177, 194 A. at 591.

-----

[3]"Book entries in regular course of business.—In any civil proceeding any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter."

[4]Although the statute expressly refers to "civil proceeding," there is no language in the act which expressly precludes the use of business records in a criminal case.

The court in *Guaraneri* set forth the standard of admissibility as follows:

> "Before a hospital record is admissible in evidence, it must affirmatively appear that it was a matter of duty to keep such a record in the regular course of the hospital's business, and the person whose duty it was to keep that record, if living, competent and within the jurisdiction, must testify that the entry was made in the regular course of business in his handwriting or under his immediate supervision. If the person who made the entries is dead, incompetent or beyond the process of the court at the time of trial, other witnesses may identify the record as to how and by whom it was kept." *State* v. *Guaraneri, supra* at 177, 194 A. at 591.

The state argues that the necessary implication from the language in *Guaraneri* is that although §9-19-13 does not apply, book entries kept in the regular course of business may be admitted in a criminal case if the proper foundation is laid. We agree.

In the case at bar defendant concedes that the witness[5] through whom the records were introduced had kept them in the usual course of business. Although the exhibits are not with the papers, it appears from the transcript that the records in question were introduced for the purpose of showing that defendant's license had been suspended and that he had been notified of the suspension. We believe that the rationale of the court in *Guaraneri*, insofar as it pertains to the admissibility of hospital records as an exception to the hearsay rule, applies with equal force here.[6] Exceptions 3, 4 and 7 are overruled.

---

[5]The witness was August K. Tilquist, a field investigator assigned to the Registry of Motor Vehicles. He was the custodian of the records at the registry. He testified that he brought the entire record of defendant to court with him.

[6]For a general discussion of this question, see McCormick, *Evidence,* chap. 32, at 596 et seq., (1954) and note 11 at 610.

## IV

During the state's direct examination of Mr. Tilquist, the witness was asked the following question:

"22 Q Mr. Tilquist, I'm going to ask you to examine the Registry of Motor Vehicles record on Daniel Jamgochian to determine whether or not that record indicates on March 10, 1968 the defendant's operator's permit or license to operate had been reinstated?"

The defendant objected on the ground that the best evidence was in the record itself. The trial justice allowed the question.

Under exception 5, defendant, without citing any authority, challenges the correctness of the trial justice's ruling. This exception requires no extended discussion. Even if we assume error, we fail to see how defendant could possibly be prejudiced thereby. Exception 5 is overruled.

## V

While cross-examining Mr. Tilquist, defendant's counsel asked the witness if he knew of his own personal knowledge if the signature on the return receipt of certified mail notifying defendant of the suspensions of his license was defendant's signature.[7] The trial justice sustained the state's objection to this question. The defendant argues that the trial justice precluded cross-examination on the very matter upon which the witness testified to in direct examination.

The scope of cross-examination is usually within the sound discretion of the trial justice. *State* v. *Campbell*, 95 R. I. 370, 187 A.2d 543; *State* v. *Kieon*, 93 R. I. 290, 175 A.2d 284. We are not persuaded by defendant's argument that the trial justice abused his discretion. Exception 6 is overruled.

---

[7]The question objected to reads as follows:
"Do you know of your own personal knowledge if this is Danny Jamgochian's signature?"

## VI

Officer Paul G. Lussier, a member of the Cranston Police Department at the time of the alleged offense, testified that while on duty patrolling Park Avenue he saw defendant operating easterly on Park Avenue, near Gansett Avenue; that he recognized defendant as being listed as having had his license suspended; and that he thereupon stopped and arrested him. It is undisputed that no other evidence as to the status of Park Avenue was offered.

The defendant contends that the state presented no evidence to establish that Park Avenue was a public highway within the meaning of the pertinent statute and that, therefore, he cannot be found guilty of the violation with which he was charged. This contention is without merit. *State* v. *Raposa,* 108 R. I. 185, 273 A.2d 673; *State* v. *Mantia,* 101 R. I. 367, 223 A.2d 843; *State* v. *Wheeler,* 92 R. I. 389, 169 A.2d 7, and *State* v. *Scofield,* 87 R. I. 78, 138 A.2d 415, are controlling here.

In *Raposa,* the court said:

> "* * * while sound trial procedure recommended categorical testimony by a state witness that the highway in question was open to the public, a trial justice might properly find from all the probative evidence in the case that the highway in issue was public within the meaning of the applicable statute." *State* v. *Raposa, supra* at 188, 273 A.2d at 674.

General Laws 1956, §31-1-23(a) defines a street or highway as "The entire width between boundary lines of every way when any part thereof is open to the use of the public for purposes of vehicular traffic." The trial justice found that the state had proven that Park Avenue was a highway. Officer Lussier's testimony was sufficient, in our judgment, directly or inferentially, to support the trial justice's finding that Park Avenue was a highway within the meaning of the statute.

Moreover, there is no reason why this court, or, for that matter, any court of competent jurisdiction in this state, cannot take judicial notice of the fact that Park Avenue is a highway which is open to the use of the public for purposes of vehicular traffic. See *Dean* v. *State*, (Md.) 107 A.2d 88. See also *Annot*. 48 A.L.R.2d 1102 et seq.

Exception 8 is overruled.

All of the defendant's exceptions briefed and argued are overruled and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Aram K. Berberian,* for defendant.