300 A.2d 259.

STATE *vs.* WILLIAM FRANCIS MALONEY.

FEBRUARY 13, 1973.

PRESENT: Roberts, C.J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J.   These are two indictments which, consoli-dated for trial to a Superior Court justice and a jury, re-sulted in the conviction of the defendant as charged in each indictment.

Thereafter, defendant moved for a new trial in each case and when such motion was denied, he seasonably prose-cuted a bill of exceptions in each case to this court.

Similarly the cases were consolidated in this court for hearing on oral arguments and briefs.   A majority of the exceptions in each bill prosecuted were disposed of adverse-ly to defendant in State v. Maloney, 109 R. I. 166, 283 A.2d 34 (1971).   Furthermore, the relevant facts of each offense are fully narrated in the cited case and need not be repeat-ed here.   Suffice it to say that the cases arose out of the arrest of defendant for possession of a stolen automobile and for unlawfully carrying weapons in said motor vehicle. The weapons were discovered in a warrantless search of the automobile, conducted by the police while defendant

was in their custody as a result of his arrest for possession of the car.

At trial, defendant objected to the admissibility of the testimony offered by the state to prove that the car had been stolen and to the admissibility of the weapons seized as the result of the warrantless search. The trial justice overruled both objections and thereafter also denied defendant's motions for directed verdicts. In *State* v. *Maloney, supra,* we overruled defendant's exceptions taken to the denial of his motions for directed verdicts, pointing out that the trial justice, in passing on said motions, was obligated to consider all the evidence admitted by him. We went on to indicate, however, that, on review in this court, the motions for directed verdicts would be considered by us on the basis of evidence properly admitted, citing *State* v. *Toti,* 94 R. I. 212, 179 A.2d 488 (1962). Continuing, we further indicated that with the motions for directed verdicts so postured, the question of whether defendant was entitled to a directed verdict in both cases or either of them would turn on whether the evidence objected to in each of the applicable cases was properly admitted. Having thus reached conclusions not fully anticipated by either defendant or the state in their oral arguments and briefs, we reached the further conclusion that the ends of justice would be better served if the parties were directed to submit supplemental briefs and further oral argument on the evidentiary question raised in each case. *See State* v. *Maloney, supra.*

After our opinion was filed, however, the state moved for leave to include in its supplemental brief arguments which would be directed to reconsideration by this court of the distinction apparently made in *State* v. *Toti, supra.* Specifically, the state, in the memorandum accompanying its motion, took the position that when a motion for a directed verdict in a criminal case has been properly denied

by the trial justice because there was evidence to be considered by the jury, the fact that such evidence has been improperly admitted over defendant's objection should not have an appellate significance different from that in a civil appeal.

In support thereof, the state referred our attention to *Glennon* v. *Great Atlantic & Pacific Tea Co.*, 87 R. I. 454, 143 A.2d 282 (1958).

That case was a civil action for negligence. Over the defendant's objection, evidence was admitted which was probative of the defendant's liability. The defendant's motion for a directed verdict was denied by the trial justice on the ground that there was evidence from which the jury could find negligence. The only such evidence, however, was that to the admissibility of which the defendant had objected. On the defendant's appeal from a verdict for the plaintiff, this court held, in effect, that the trial justice's denial of the motion for directed verdict was correct notwithstanding the fact that the evidence on which he submitted the case to the jury should have been excluded when objected to by the defendant. This court then proceeded to grant the defendant a new trial because the admission of the evidence in question amounted to prejudicial error.

So here, urged the state in its motion for leave to argue reconsideration of the distinction indicated in *State* v. *Toti, supra,* each case, or either of them, as the circumstances warranted, should be remitted to the Superior Court for a new trial or trials if we were to hold that the trial justice committed prejudicial error in admitting evidence over defendant's objection.

On rereading *State* v. *Toti, supra,* it became immediately apparent that *Toti* did not stand for the proposition for which it was improvidently cited in *State* v. *Maloney, supra.* Consequently, we granted the state's motion for leave

to argue, in effect, that on review in this court of an exception taken to a denial by the trial justice of a motion for a directed verdict in a criminal case, the decision of the trial justice on that motion will be viewed in light of all the evidence without regard to whether any or all of such evidence was properly admitted. We did so, however, without prejudice to defendant's right to argue in opposition to the state's contention. *State* v. *Maloney,* 109 R. I. 937, 284 A.2d 304 (1971).

Leave, therefore, having thus been granted, both parties briefed and orally argued their respective positions. So doing, the state urged the desirability of having appellate review of a trial justice's decision on a motion for directed verdict in a criminal case governed by the same rule as this court applies in civil cases. The defendant, not surprisingly, vigorously argued in favor of adherence to the distinction seemingly suggested by the language employed in *State* v. *Toti, supra.*

However, we agree with the state that there should be no distinction, and moreover that the ends of justice are better served by following the test applied in *Glennon* v. *Great Atlantic & Pacific Tea Co., supra.* In this manner, the state points out, the prosecution is afforded the same opportunity to produce other evidence, if any it has, as is provided to plaintiffs in civil cases. Furthermore, the distinction seemingly suggested in *Toti* is more apparent than real.

Toti was charged with carrying a concealed weapon without license so to do. This charge grew out of Toti handing a gun to an acquaintance at the front door of the latter's home. She reported this incident to the police who thereafter apprehended Toti.

At the time of his arrest, Toti admitted to the arresting officer that the gun had been concealed in his waistband while he was en route to the home of his acquaintance.

At trial, Toti objected to the arresting officer's testimony regarding such admission, and when his objection was overruled and the motion to strike the answer was denied, he excepted.

His efforts to exclude the incriminating statement were predicated on the proposition that an uncorroborated confession or admission is insufficient to establish the corpus delicti citing *State* v. *Boswell,* 73 R. I. 358, 56 A.2d 196 (1947).

The state agreed with such contention, having no alternative,[1] but argued that the testimony of Toti's acquaintance regarding the handing of the gun to her constituted independent corroborative evidence sufficient to establish the corpus delicti, citing *State* v. *Jacobs,* 21 R. I. 259, 43 A. 31 (1899). An examination of her testimony, however, disclosed that she did not see the gun until it was handed to her. In short, so far as the acquaintance knew the gun was never concealed. From this latter circumstance we mistakenly and gratuitously observed that Toti's admission to the arresting officer had been improperly admitted and compounded error by indicating that, because the admission came on the record improperly, the trial justice should have granted Toti's motion for a directed verdict.

Clearly, Toti's incriminating statement to the arresting officer was properly admitted since it would have been probative of his guilt if there had been corroborating evidence sufficient to establish the corpus delicti. This is so because it was not incumbent on the state to establish the corpus delicti before the admission could be properly received. *State* v. *Wheeler,* 92 R. I. 389, 169 A.2d 7 (1961).

[1]It has long been almost universally held that an uncorroborated admission of guilt is legally insufficient to establish the corpus delicti, proof of which beyond a reasonable doubt is essential to sustain a conviction. 30 Am.Jur.2d *Evidence* §1136 (1967) and the numerous cases therein collected.

However, there being no independent corroborating evidence, Toti's motion for a directed verdict should have been granted, not because his self-incrimination was inadmissible, but because the corpus delicti had not been established.

It follows then that *Toti* is not authority for the proposition that in passing on an exception taken to a trial justice's denial of a motion for a directed verdict, this court will look only to that evidence properly admitted. Rather we will, as must the trial justice, look to all the evidence that comes upon the record without regard to whether the evidence in the record was properly admitted.

In light of the foregoing, it is now apparent, in the instant cases, that the trial justice, not having erred in denying defendant's motions for new trials, defendant's exceptions taken to the denial of his motions are without merit and these exceptions are overruled.

This brings us then to a consideration of the evidentiary exceptions, the disposition of which was deferred pending further oral argument on supplementary briefs.

I

The Evidentiary Exception Prosecuted in
Connection with Defendant's Conviction
on Indictment No. 35700 (possession of a
weapon).

As heretofore stated in this opinion, and fully narrated in *State* v. *Maloney, supra,* the guns in question were discovered and seized in a warrantless search of the automobile at a time when defendant was in the custody of the police and had been in such custody for some 45 minutes.

In *State* v. *Brown,* 106 R. I. 453, 260 A.2d 716 (1970), this court held that the warrantless search of an automobile some half hour after defendant had been taken in custody following a valid arrest, was an unlawful search because, in the circumstances there present, the obtaining of a search warrant would not have been impracticable.

It was in light of such holding, and its possible applica-

tion to the circumstances here, that we concluded when the instant case was previously before us that the ends of justice would be better served by having the point further argued, especially in light of *Coolidge* v. *New Hampshire,* 403 U. S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), which was decided subsequent to our holding in *State* v. *Brown, supra.* We say "especially" for the reason that a cursory reading of *Coolidge* v. *New Hampshire, supra,* suggested that the United States Supreme Court may have relaxed the rigidity of the practicability rule adhered to by us in *State* v. *Brown, supra.*

However, after the supplemental briefs had been filed, oral arguments heard, and this court had an opportunity to make a thorough study of *Coolidge* v. *New Hampshire, supra,* it became apparent that in the opinion of a majority of the justices of the United States Supreme Court, there had been no relaxing of the practicability rule.

But, in its supplemental brief and oral argument, the state contends that the practicability rule is unavailing to defendant. This is so, the state argues, because the vehicle searched was stolen and not one in which defendant had a possessory or proprietary interest, hence without standing to challenge the search. In support thereof it cites among others, *Palmer* v. *State,* 14 Md. App. 159, 286 A.2d 572 (1972.).

In *Palmer* the court, acknowledging that *Cotton* v. *United States,* 371 F.2d 385 (9th Cir. 1967), was authority *contra,* but adhering to what it believed to be the weight of authority, held that a car thief is without standing to question the legality of a search of the stolen vehicle.[2] But

---

[2]*See also Kaufman* v. *United States,* 323 F. Supp. 623 (E.D. Mo. 1971); *State* v. *Edmonds,* 462 S.W.2d 782 (Mo. 1971); *Meade* v. *Cox,* 310 F. Supp. 233 (W.D. Va. 1970); *Harper* v. *State,* 84 Nev. 233, 440 P.2d 893 (1968); *Williams* v. *United States,* 323 F.2d 90 (10th Cir. 1963); *Slyter* v. *State,* 246 Miss. 402, 149 So.2d 489 (1963); *State* v. *Pokini,* 45 Hawaii 295, 367 P.2d 499 (1961).

apart from support in other jurisdictions, the Maryland court made clear its belief that the rule adopted by it found support in reason. In this regard the court stated at 169, 286 A.2d at 578: "No valuable social purposes could conceivably be served by extending the protection of the Fourth Amendment to a thief in the enjoyment of the stolen automobile." We agree with such principle when applicable to the facts of a given case.

But, assuming that an accused who is objecting to the introduction of evidence obtained in a warrantless search, lacks standing to question the search, it does not necessarily follow that such an accused is precluded from objecting to the use as evidence of an object seized in such search, again assuming that he can establish a proprietary or possessory interest in the object seized. *Jones* v. *United States,* 362 U. S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State* v. *Jardine,* 110 R. I. 491, 293 A.2d 901 (1972).

However, the question of whether an accused can successfully exclude from evidence that which he contends the state obtained through a violation of the accused's constitutional protection against an unreasonable search or seizure must first be determined by an evidentiary hearing held prior to the state's offer of the evidence seized. Here, there was no such evidentiary hearing. Rather, defendant waited until the state proffered the weapons as evidence and the trial justice summarily overruled defendant's objection to their introduction.

It has long been and still is the rule in this jurisdiction that exclusion of evidence alleged to have been obtained illegally must be sought procedurally by a motion to suppress heard prior to trial. *State* v. *Cairo,* 74 R. I. 377, 60 A.2d 841 (1948).

However, in *State* v. *Leavitt,* 103 R. I. 273, 237 A.2d 309 (1968), the defendant who had been indicted for murder made no pretrial motion to suppress as evidence the alleged

murder weapon, a knife, which had been found in the defendant's car during the course of a warrantless search by the police. Instead, he waited until that point in his trial before a jury when the state was about to offer the knife into evidence. He based his objection to the introduction of the knife on the ground that it was the fruit of a search conducted in violation of articles IV and XIV of amendments to the Constitution of the United States and article I, section 6 of the Rhode Island constitution. Stating his objection and the ground therefor to the trial justice in a bench conference he requested and was granted a voir dire hearing in substitution of a hearing on a motion to suppress made prior to trial.

That hearing consumed two and one-half days of testimony taken in the absence of the jury.[3] The state acknowledged that the search of the car had been conducted without a warrant but contended that the defendant had freely consented when asked for permission to search the car. At the conclusion of the testimony offered by the defendant and by the state on the issue thus presented, the trial justice found the evidence of the police to be more credible, and overruled the defendant's objection to the introduction of the knife.

When the case came on to be heard in this court on the defendant's bill of exceptions, we inferentially noted, and now categorically declare, that the trial justice could not have been faulted procedurally if he had summarily overruled the defendant's objection to the introduction of the knife.

But, we also noted that in *Fay* v. *Noia,* 372 U. S. 391, 83 S. Ct. 822, 9 L.Ed.2d 837 (1963), the United States Su-

---

[3]This court is now convinced that absenting a jury for the purpose of disposing of a question which should properly have been resolved before the jury was impaneled is contrary to trial court expediency, and if for no other reason, should be avoided.

preme Court had made clear that while states were free to enforce their procedural rules in sustaining the conviction of one accused of committing a crime, adherence to such rules could not legitimize the unconstitutional conduct by which the conviction was procured. In short, what the Supreme Court was saying in *Fay* v. *Noia, supra,* was that a person so convicted was not barred from seeking post-conviction relief in the federal courts by way of habeas corpus.

We recognize that if the procedural exclusionary rule in *State* v. *Cairo, supra,* were made applicable to Leavitt, the latter could further litigate the alleged invalidity of the search of his car through an application for a post-conviction remedy. Further, since we had before us the record of the voir dire hearing conducted by the trial justice, we concluded that the ends of justice would best be served by treating that record as though it had been made at a hearing conducted on a pretrial motion to suppress.

Here, however, as heretofore observed, there was no evidentiary hearing either prior to or in the course of the trial from which a determination can be had as to the correctness of the trial justice's decision to permit the state to introduce as evidence the guns seized in the course of the warrantless search. In such circumstances we have concluded that the better practice is to sustain the trial justice's ruling as being conformable to the rule in *State* v. *Cairo, supra,* and leave defendant to pursue such post-conviction remedy as he might have.

So concluding, we are not unmindful of a contrary procedure adopted by this court in *State* v. *Carufel,* 106 R. I. 739, 263 A.2d 686 (1970). There, there had been no prior adjudication in the Superior Court of the constitutional grounds upon which Carufel challenged the admissibility of cannabis seized in a search of his person, rather, he raised those grounds for the first time on review in this court of

the exception taken to the overruling of his objection made at trial.

In an extension of the procedure followed in *State* v. *Leavitt, supra,* we sustained the defendant's exception taken to the ruling admitting the cannabis and remitted the case to the Superior Court for the sole purpose of an evidentiary hearing on the merits of the defendant's challenge.

Subsequent thereto, however, we have become persuaded that the indulgence extended to Carufel was more disruptive of Superior Court expediency than would be the case if defendants similarly situated were left to pursue postconviction remedies.

Moreover, since *Carufel,* Superior Court justices exercising commendable diligence and zeal have been determining sua sponte when a case is ready for trial, whether the state intends to offer as evidence that to which the defendant will object on constitutional grounds. Whenever such inquiries have disclosed the probability of an evidentiary controversy, said justices have conducted a pretrial hearing thus forestalling what in *State* v. *Carufel, supra,* this court referred to as a "procedural hodgepodge."

In light of this diligence, it is highly unlikely that trial justices will be confronted with either a *Leavitt* or *Carufel* situation arising during the course of trial. Even so, this court is persuaded that such likelihood, however remote, should be eliminated and to this end we now hold that in all criminal trials conducted subsequent to the filing of this opinion, efforts to suppress evidence must be, by motions, made and heard prior to trial.

The defendant's exception taken to the trial justice's ruling permitting the guns to be admitted into evidence is overruled. All of his other exceptions having been heretofore overruled, the case is remitted to the Superior Court for further proceedings.

## II

The Exceptions Taken to the Evidentiary
Rulings made in the Court of Defendant's
Trial on Indictment Number 35699 (pos-
session of a stolen motor vehicle).

As more minutely narrated in *State* v. *Maloney, supra,*
the car in defendant's possession, and alleged to have been
stolen, was the property of a Massachusetts car rental agen-
cy. It was in checking out the registration of the car that
the arresting officers were informed that the car being op-
erated by defendant had been reported stolen by its owner.

At trial, the state produced the rental agency's security
manager for the purpose of establishing the corpus delicti.
He, over objection by defendant, was permitted to testify
how the theft of the car was brought to his attention. The
defendant's objection to such testimony was that it con-
sisted of the witness' recounting how, by checking the
agency's records, said witness determined that the car had
been stolen. The trial justice admitted such testimony
apparently on the ground that since he found the records
to have been kept in the regular course of business, such
records were admissible under G. L. 1956 (1969 Reenact-
ment) §9-19-13. However, the records regarding the con-
tents of which the witness had testified were never received
in evidence.

When the case came on for further argument in accord-
ance with our order, the state, in its oral argument and
brief, made clear that it was relying on the cited statute
to support the admissibility of the security officer's testi-
mony. When the case was originally argued before this
court, defendant surprised the state by arguing that §9-
19-13 was without application in criminal cases, citing
*State* v. *Guaraneri*, 59 R. I. 173, 194 A. 589 (1937). We
say "surprised" because neither defendant nor the state had
cited either the statute or *State* v. *Guaraneri, supra,* in

their respective briefs. Since, if the testimony objected to by defendant should not have been admitted, there would have been no proof of the corpus delicti, we concluded that the ends of justice would be better served, as heretofore noted, by directing the parties to submit supplemental briefs and further orally argue the point.

In its supplementary brief and oral argument the state acknowledged that §9-19-13 is not applicable to criminal cases. Nevertheless, it strenuously contended that the clear implication of *State* v. *Guaraneri, supra,* was that, apart from the exception as authorized by the cited statute, records kept in the regular course of business could be received in a criminal trial if a proper foundation were laid.

We agree that the state's reading of our implied holding in *State* v. *Guaraneri, supra,* is correct. Indeed in *State* v. *Jamgochian,* 109 R. I. 46, 280 A.2d 320 (1971), we so held.

But, such holding is unavailing to the state in the instant case. This is so because the exception to the hearsay rule applies only to the admissibility of the records themselves, and not to testimony which would be accepted for the purpose of laying a foundation. Here, the records regarding which the security officer's testimony was received were never introduced. Consequently, such testimony, being hearsay, and not falling within any exception to the hearsay rule, should not have been received into evidence over the defendant's objection; his exceptions thereto must be sustained, and the case remitted to the Superior Court for a new trial.

The opinion of Mr. Justice Powers in this case was approved by the court prior to the effective date of his retirement but was announced thereafter. Mr. Justice Doris did not participate in the decision.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Moses Kando,* Asst. Public Defender, for defendant.