STATE

v.

**Lamphone VORGVONGSA.**

No. 96–569–C.A.

Supreme Court of Rhode Island.

April 14, 1997.

Aaron L. Weisman, Lauren Sandler Zurier, Providence, for Plaintiff.

John F. Cicilline, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before the court on the defendant's appeal from a judgment of conviction of first-degree murder entered in the Superior Court after a jury trial. Subsequent to the jury's rendition of its verdict finding the defendant guilty of murder in the first degree, the trial justice granted the defendant's motion for new trial. The state petitioned for review of the trial justice's decision by writ of certiorari. This court issued the writ, and in *State v. Vorgvongsa,* 670 A.2d 1250 (R.I.1996) (*Vorgvongsa I*), we granted the petition for certiorari, quashed the order granting the defendant's motion for a new trial, and remanded the case to the Superior Court with directions to deny the defendant's motion for new trial, to reinstate his conviction, and to impose sentence. Pursuant to our direction, the trial justice reinstated the conviction of murder in the first degree, and in accordance with G.L.1956 § 11–23–2, he sentenced the defendant to the mandatory term of life imprisonment. We affirm the judgment of conviction including the sentence imposed by the trial justice. The facts of the case as set forth in our opinion in *Vorgvongsa I* are as follows:

"On March 2, 1990, Sonexay Phommachanh (Phommachanh) was shot and killed on Moy Street in the city of Providence. Two people were indicted for that murder,

Chantha Leuthavone (Leuthavone) and Lamphone Vorgvongsa (Vorgvongsa). Leuthavone was tried first and convicted by a jury of having aided and abetted Vorgvongsa in the murder. That conviction was affirmed by this court on April 14, 1994. [*State v. Leuthavone*, 640 A.2d 515 (R.I.1994).] The defendant here, Vorgvongsa, was later tried for the murder and convicted on October 7, 1994. His motion for a new trial was granted by the trial justice, and the order entered thereon is the subject matter here for review.

"There were no eyewitnesses to the murder concerned in this case. The state's prosecution was based on circumstantial evidence stemming from the trial testimony of nine witnesses, three of whom had been with the deceased on the night of his murder seconds prior to his being shot. The other six witnesses were police personnel, an expert from the Rhode Island State Crime Laboratory, and a Deputy State Medical Examiner.

"On March 2, 1990, some friends of Viengsavoth Syharath who knew he was leaving this state to take up residence in California gathered in a second-floor apartment at 29 Moy Street in Providence to wish him well. At about 10:15 p.m., the party guests were enjoying food, beer, and cognac while seated on the floor in the unfurnished living room in the apartment, when one of the guests, the victim, Phommachanh, went over to Leuthavone, and offered him a drink of cognac. Leuthavone refused the cognac, and Phommachanh, speaking in Laotian, called him a 'chicken.' Leuthavone, angered by that name, got up from his seated position and pushed Phommachanh. A pushing and grabbing melee erupted, and in short order, some guests began scattering for shelter while others attempted to quell the fracas. Within minutes, despite broken plates and glass all over the living room floor, peace settled in on the festive skirmish, but the party spirit had understandably dissipated and the guests began leaving the apartment. Leuthavone and the defendant, Vorgvongsa, were the first to leave. Others followed and gathered on the sidewalk in front of the apartment to bid their last farewells. Leuthavone and Vorgvongsa, however, were not among those talking on the sidewalk, but Phommachanh, whose fertile 'chicken' epithet had triggered the party fracas was there, attempting to persuade the party guests to return to the apartment and resume the social occasion. As Phommachanh was pleading with guests, a silver Toyota, with Leuthavone and Vorgvongsa as driver and passenger, drove up to the scene. Leuthavone exited the Toyota and approached Phommachanh, speaking briefly to him in Laotian. The others present, assuming that all was now well, decided to return to the apartment. As they did, Leuthavone and Vorgvongsa remained outside. Within minutes, however, Leuthavone and Vorgvongsa did reenter the apartment together.

"They did not, however, join the other partygoers in the living room. Instead, they walked directly through the living room and into the kitchen. At this point, Phommachanh, who was with the other guests, walked over to the kitchen and extended his hand to shake hands with Leuthavone and to apologize for having earlier called him a 'chicken.' Without warning, Leuthavone pushed Phommachanh back into the living room and came after Phommachanh with a handgun. Immediately behind Leuthavone, the defendant Vorgvongsa rushed out, also with gun in hand. Phommachanh tried to find shelter by hiding behind some of the partygoers and was moving about the living room. Vorgvongsa was pointing his handgun around the room, looking for Phommachanh, and when he located him, Vorgvongsa attempted to shoot him, but the handgun misfired several times. Vorgvongsa then began banging the gun on its side, attempting to remedy the cause of its misfiring. The party guests began running for cover. Leuthavone also attempted to shoot Phommachanh, but his weapon also misfired. Leuthavone then unloaded and reloaded his gun, hoping that it would then properly function. As Leuthavone was reloading his gun, one of the partygoers, sensing that Phommachanh

was targeted for doom, pushed Phommachanh toward a stairway exit leading from the apartment and told him to go. Phommachanh ran down the stairway. Leuthavone and Vorgvongsa then followed Phommachanh down the stairway, and about fifteen seconds later three shots were heard from the Moy Street sidewalk area. At that, Annette St. Louis (St.Louis) one of the ill-fated party guests, who fortuitously during the apartment gun chase had telephoned for 911 assistance from an apartment bedroom, ran out of the bedroom and saw that all of the party guests except Phommachanh, Leuthavone, and Vorgvongsa were present. She then ran down the exit stairway and out onto Moy Street. She did not see Leuthavone or the defendant, Vorgvongsa, and she noticed that the silver Toyota they had arrived in earlier was gone. She looked a short distance away and saw rescue-wagon personnel exiting their vehicle to tend to someone lying face down on the sidewalk. It was Phommachanh. He had been fatally shot in the back.

"A short time later police responded and, after preliminary questioning of some of the party guests, learned that Leuthavone lived nearby at 34 Homer Street. Police went to that address, saw the silver Toyota parked there, and while surveilling the car, observed Leuthavone and another person, not Vorgvongsa, leave 34 Homer Street and enter the Toyota. As the police approached, Leuthavone, seated in the passenger seat, attempted to hide and conceal a gun under his seat. He was arrested and the gun seized. When the gun was later test fired, the test-fired bullet, when compared with the fatal bullet recovered from Phommachanh's body, confirmed that the bullet that killed Phommachanh had not been fired from Leuthavone's gun. Vorgvongsa was later arrested, but his gun was never found." *Vorgvongsa,* 670 A.2d at 1251–52.

In support of his appeal defendant raises two issues. Further facts will be supplied as may be necessary to deal with these issues.

## I

### The Refusal to Charge the Jury on the Lesser Included Offense of Murder in the Second Degree

■ The defendant argues that the trial justice committed reversible error in refusing to charge the jury that it might find defendant guilty of murder in the second degree. There is no question that second-degree murder is a lesser included offense of the crime of murder in the first degree. *State v. Grabowski,* 644 A.2d 1282, 1285 (R.I.1994). The distinction between murder in the first degree and murder in the second degree is that murder in the first degree requires premeditation. General Laws 1956 § 11–23–1. Such premeditation has been defined as requiring the formation of an intent to kill for a period more than momentarily prior to the killing itself. *See State v. Amazeen,* 526 A.2d 1268, 1271 (R.I.1987); *State v. Myers,* 115 R.I. 583, 591, 350 A.2d 611, 615 (1976); *State v. Fenik,* 45 R.I. 309, 315, 121 A. 218, 221 (1923).

In his requests for charge to the jury, defendant asked that the court give the following instruction in respect to lesser included offenses: "The defendant requests charges on second-degree murder and manslaughter." In this request defendant does not point out any of the three theories upon which such a charge might be given: (1) momentary premeditation, (2) wanton recklessness, (3) second-degree felony murder. *State v. Iovino,* 554 A.2d 1037, 1039 (R.I. 1989). Rule 30 of the Superior Court Rules of Criminal Procedure provides that, "[n]o party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."

In the case at bar, counsel for defendant simply objected "to the court's failure to give second-degree [murder] and manslaughter." He did not point out with any specificity the basis for his objection or the theory of second-degree murder concerning which he believed the charge should be directed.

In his appeal, defendant asserts only the failure to charge on second-degree murder

and does not contend that the trial justice committed error in failing to charge on the lesser included offense of manslaughter. Pursuant to Rule 16(a) of the Supreme Court Rules of Appellate Procedure, issues not briefed and argued are deemed to be waived. *State v. Jamgochian,* 109 R.I. 46, 48, 280 A.2d 320, 322 (1971). For purposes of this opinion, we shall assume that the issue of instruction in respect to second-degree murder has been preserved for appeal. The only possible basis upon which defendant could argue that second-degree murder could have been found by a rational jury must be derived from the record. *See State v. Brown,* 549 A.2d 1373, 1378 (R.I.1988); *State v. Tarvis,* 465 A.2d 164, 171 (R.I.1983). We conclude that the only possible basis that might have been argued by defendant to support a charge on second-degree murder was the period of premeditation since there is not a shred of evidence in the record that would even remotely suggest wanton recklessness or felony murder. We shall turn to the question of the issue of premeditation.

We have earlier indicated that first-degree murder and its distinction from second-degree murder was long ago delineated in *State v. Fenik, supra.* "[W]e think the premeditation necessary to establish the first degree of murder must be shown to have existed for more than a barely appreciable length of time before the killing. That is it must have had something more than a momentary existence." 45 R.I. at 315, 121 A. at 221.

In the case at bar the uncontradicted facts disclose that defendant and Leuthavone, having left the party after quarreling with the victim, returned in a motor vehicle, assured the guests who were on the sidewalk that all was well, and reentered the apartment. When the victim extended his hand to apologize, Leuthavone pushed him into the living room and drew a handgun. The defendant also rushed forward with a gun in his hand and attempted to shoot at the victim. When his gun misfired several times, he banged the gun on its side in an attempt to remedy the cause of its misfiring. While this activity was going on, the victim tried to find shelter by hiding behind some of the other party members. This action clearly took more

than a moment. During the interim Leuthavone unloaded and reloaded his gun while one of those who attended the party pushed the victim toward a stairway exit. The victim ran down the stairway, and Leuthavone and defendant followed. About fifteen seconds later three shots rang out. Leuthavone and defendant had departed. The victim was found by rescue wagon personnel. He was fatally shot in the back.

These uncontradicted facts establish beyond any reasonable doubt that defendant and Leuthavone, who also aided and abetted in this crime, planned to kill the victim from the moment they returned to the party armed with guns, drew the guns, and made several attempts to shoot the victim even before he left the apartment. They then implemented their plan by chasing him down the stairs and shooting him on the street when his back was turned to them. It is further established by circumstantial evidence that the fatal shot came from defendant's gun, which was then discarded in some fashion and never found.

One of the essential elements in seeking an instruction in regard to a lesser included offense is that there must be sufficient evidence to warrant such an instruction. *State v. Figueras,* 644 A.2d 291, 294 (R.I.1994); *Brown,* 549 A.2d at 1378. As stated in *Figueras,* there must be an actual and adequate factual dispute concerning the element that distinguishes the greater from the lesser offense. 644 A.2d at 294.

In the case at bar defendant's theory was one of innocence, not one of time of formation of intent. If a lesser included offense is to be properly included in the instruction, evidence in regard to the disputed element must be sufficient to prevent the jury's determination from being wholly irrational and based upon mere speculation. In essence a defendant is not entitled to a charge on a lesser degree of homicide if the evidence could not support a finding by a rational jury on the lesser charge. *See Tarvis,* 465 A.2d at 171. In the case at bar we are constrained to hold that no rational jury could have found this defendant guilty of murder in the second degree. The only rational alternative would have been between

conviction of murder in the first degree and a verdict of not guilty. In declining to give the requested instruction, the trial justice committed no error.

## II

### The Trial Justice's Sentence

The defendant contends that the trial justice acted improperly in sentencing defendant to a term of life imprisonment when he had earlier disagreed with the jury's verdict by granting a motion for new trial. The cases cited by defendant simply do not deal with this issue, and there is no need to attempt to distinguish them.

▪ The Supreme Court of the United States has determined that the doctrine of double jeopardy is not a bar to the reinstatement of a verdict of guilt after a trial judge has made a ruling in favor of a defendant, the reversal of which would not require a new trial. *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). Consequently there was no bar from either the Federal or the Rhode Island Constitution to prevent this court's review of the granting of a motion for new trial and the reinstatement of a verdict of guilty. This court in *Vorgvongsa I* had directed the trial justice to reinstate the verdict of the jury and to sentence defendant in accordance with law. 670 A.2d at 1255. It can scarcely be disputed that this court has final revisory and appellate jurisdiction over all other judicial tribunals. R.I. Const. art. 10, secs. 1 and 2.

We have held that an opinion of this court declares "the law and the law thus announced becomes a precedent which must be followed by any inferior court" even though a trial justice may personally disagree with the wisdom or the soundness of the rule to be applied. *D'Arezzo v. D'Arezzo*, 107 R.I. 422, 426–27, 267 A.2d 683, 685 (1970). A fortiori, a decision of this court setting forth the law in respect to the same case must be obeyed without question by the trial justice to whom it is directed.

▪ In the case at bar this court directed the trial justice to sentence the defendant after reinstating the conviction. Quite contra

to the defendant's argument, the trial justice had no discretion pursuant to § 11–23–2 save to impose upon the defendant a sentence of life imprisonment. He obeyed this mandate and in so doing, performed his duty in accordance with the constitution and laws of this state and in accordance with his oath of office. The defendant's contentions to the contrary are utterly without merit.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction entered in the Superior Court is hereby affirmed.