DECISION
This Petition for Post-Conviction Relief is filed pursuant to Rhode Island General Laws 10-9.1-1.
 TRAVEL OF THE CASE
The Petitioner was indicted on one count of Murder and three counts of Felony Assault for events that occurred on March 2, 1990. During the course of his trial, two counts of felony assault were dismissed by the trial justice pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure and the other count of felony assault was dismissed by the State. On the sole count remaining, the jury returned a verdict of Guilty of Murder in the First Degree. The trial justice granted the Petitioner's Motion for a New Trial. In granting the Motion for New Trial, the trial justice stated: "I specifically told the jury when discussing beyond a reasonable doubt that mere suspicion, however strong, will never sustain a verdict of guilty. I not only disagree with the jury, but I find, exercising my independent judgment and by a fair preponderance of the evidence, that substantial justice was not done by the verdict of this jury and, therefore, I grant a Motion for New Trial."
The State appealed to the Supreme Court. The Supreme Court of Rhode Island quashed the Order for a New Trial and remanded the case to the Superior Court with instructions to reinstate the conviction and sentence the Petitioner. The Petitioner was sentenced on May 26, 1996, to a term of life in prison as required by law. His direct appeal of that conviction was denied by the Supreme Court (State v. Vorgvongsa, 692 A.2d, 1194 (1997). The Petitioner timely filed his application for post-conviction relief and the trial justice recused himself from further consideration of the matter and the application was assigned to be heard by the Presiding Justice of the Superior Court.
 THE FACTS OF THE CASE
The Petitioner, along with his co-defendant, Chanta Leuthavone, was present at a party that was being held at 29 Moy Street in Providence on March 2, 1990. A number of other people were present at this party, among them the decedent, Sonesay Phommachanh, and several of the State's witnesses at trial, Annette St. Louis, Katta Keophilivanh and Sunthorn Thongsavath.
Sometime during the party, an altercation broke out between Sonesay and Chanta because Chanta would not take a drink of liquor and Sonesay called him a "chicken". After some pushing and yelling, Chanta left the party with the Petitioner. Other persons at the party drifted outside the apartment; the party was breaking up because of the fight. Petitioner and his co-defendant left the area and returned some time later. Attempts to apologize were made by the victim to Chanta and the Petitioner. Under the assumption that matters had been resolved, most of the people who had been present at the apartment originally went back inside.
Once back inside the apartment, Sonesay approached the kitchen where Chanta and the Petitioner had gone, in an effort to ensure that the earlier incident was indeed forgotten. As he approached the kitchen, Chanta and the Petitioner came out of that room and both of them drew guns; the Petitioner from his ankle area. Attempts were made to fire the weapons at Sonesay; however, neither weapon discharged at this point in time. Both the Petitioner and his co-defendant were seen making efforts to restore the operability of their respective weapons. Fearing for his life, Sonesay fled the apartment and was followed by some of the persons who were at the apartment, including the Petitioner and his co-defendant.
Shortly after the people left the apartment, several shots were heard outside the apartment. The victim was found a short distance away; he had been shot once in the back and died a short time later as a result of that wound.
Based on information received from witnesses at the scene, the police responded to Homer Street in Providence, where they observed an automobile matching the description of the vehicle in which the suspects had fled. A short time later, two persons were observed entering the vehicle. Those persons were detained; one of them was the Petitioner's co-defendant in this mater, Chanta Leuthavone. A handgun was recovered from the vehicle at the time of the detention; ballistics evidence at trial indicated that this weapon was not the weapon which fired the bullet which killed the victim.
The Petitioner was arrested sometime after the night of the incident. The weapon used to murder the victim in this matter was never recovered.
 EVIDENCE PRESENTED
The Petitioner presented the live testimony of two witnesses and introduced several exhibits. The exhibits included the transcripts of: 1) the trial in this matter, 2) the New Trial Motion, 3) the Sentencing Hearing, 4) the prior sworn testimony of Ms. St. Louis, 5) a ballistics report authored by Carl Majesky, 6) the face sheet of the Superior Court case, and 7) the newspaper article concerning the defendant's trial. The witnesses who testified were John F. Cicilline, Petitioner's trial counsel, and the Petitioner. The State introduced one document containing the ballistics report of Mr. Majesky and a letter from him to Robert Hathaway.
Mr. Cicilline testified that he represented the Petitioner at the trial. He reviewed discovery materials and otherwise prepared for the trial in his usual manner. He has been a lawyer for approximately thirty-five years and estimated that he has tried hundreds of criminal cases. He testified that he developed a theory of this case that highlighted the differences between what occurred inside the apartment, for which there was eyewitness testimony, and what occurred outside the apartment, after the victim had run out of the apartment, for which there was no eyewitness testimony. According to Mr. Cicilline's testimony, he decided to approach the case by conceding that the Petitioner was guilty of what occurred in the apartment, but was innocent of what happened outside, i.e., the murder. Towards that end, he indicated that he was not concerned with impeaching Ms. St. Louis' testimony because she emphasized the differences in the quantum of evidence, as well as his professional opinion that she was actually helping his defense by some of her direct testimony. When questioned about the contrary ballistics report of Mr. Majesky, which report originally opined that the weapon found was
the murder weapon, Mr. Cicilline indicated that he was aware of the report, and was also aware from a personal conversation with Mr. Majesky that his original report was in error. Mr. Majesky also informed Mr. Cicilline that he had written a letter to Mr. Hathaway to that effect, and to the effect that he now agreed with Mr. Hathaway's conclusion that the weapon test-fired could not have been the murder weapon, and he would so testify if called as a witness. Given that information, Mr. Cicilline testified that he made a tactical decision not to call Mr. Majesky as a witness.
When questioned about his reaction to certain remarks made by the prosecutor in his closing argument, Mr. Cicilline indicated that one remark bothered him and a different remark bothered the judge, but that he decided not to ask that the matter be passed because of the remarks. Similarly, Mr. Cicilline could not recall seeing the article or being shown it by the Petitioner on the morning that the jury selection was set to begin.
The Petitioner testified that he had given the newspaper article (Petitioner's exhibit #7) to Mr. Cicilline and also that he had hired Mr. Cicilline to be his attorney.
 ARGUMENT
The Petitioner cites six grounds for the granting of his petition; two due process grounds and four separate grounds for his claim that his trial counsel's ineffectiveness deprived him of a fair trial. The first two grounds, citing due process violations, request that the Court reverse the Petitioner's conviction because: 1.) the State did not present evidence which proved each element of the offense of murder in the first degree beyond a reasonable doubt, and 2.) the verdict was against the weight of the evidence submitted. The remaining four grounds, citing trial counsel's ineffectiveness, argue that Petitioner is entitled to a new trial because: (1) defense counsel failed to introduce the existence of evidence which contradicted the testimony of the State's ballistic expert, Robert Hathaway; (2) defense counsel failed to conduct cross-examination of a State's witness, Annette St. Louis, concerning prior testimony she had given which allegedly contained statements inconsistent with her trial testimony; (3) defense counsel failed to move for a continuance of defendant's trial because a newspaper article about the case appeared in the Providence Journal on the morning that the jury was to be chosen; and 4) defense counsel failed to move for a mistrial or demand an adequate cautionary instruction concerning allegedly improper remarks made by the prosecutor during his closing summation.
 LAW
(1) DUE PROCESS VIOLATIONS
In the circumstances of this case, the Supreme Court of Rhode Island, in its decision quashing the Order Granting a New Trial to the Petitioner, validated the jury's decision that the State proved the guilty of the Petitioner beyond a reasonable doubt (See State v. Vorgvongsa, 670 A.2d 1250 (1996).
Further, a review of the transcript of the trial supports the finding of the jury that the Petitioner is guilty of murder. The testimony presented is that the Petitioner, along with Chanta, came out of the kitchen with guns ablazing. They chased the decedent outside the apartment and within seconds Sonesay is shot in the back and dies as a result of the wound inflicted. Whether it was the Petitioner who fired the fatal shot or Chanta is of no legal consequence. Under the doctrine of complicity, those who are involved in shooting at a target victim are equally responsible for the harm that results — in this case murder.
(2) INEFFECTIVE ASSISTANCE OF COUNSEL.
The uncontradicted testimony presented was that trial counsel was hired by the Petitioner as defense counsel of his choice. InState v. Dunn, 726 A.2d 1142 (R.I. 1999), our Supreme Court in a footnote to the decision stated:
 4. "We note also that rarely, if ever, following conviction has any federal or state court permitted a defendant who has been represented by private counsel to later question, in post-conviction proceedings, the ineffectiveness or inefficiency of the trial counsel that the defendant chose and selected to represent him or her at trial. The "incompetency (or one of its many synonyms) of private counsel for the defendant in a criminal prosecution is neither a denial of due process under the Fourteenth Amendment, nor an infringement of the right to be represented by counsel under either the federal or state constitution, unless the attorney's representation is so lacking that the trial has become a farce and a mockery of justice, in which case the judgment, violating either the Fifth, Sixth, or Fourteenth Amendment to the Federal Constitution, or a provision of a state constitution, is void." Annotation. Incompetency of Counsel, 74 A.L.R.2d 1390, 1397 (1960)."
Even assuming the Petitioner had a right to challenge the representation of counsel of his choice, the record fails to support a finding of ineffectiveness. The only two legitimate issues are the failure to thoroughly cross-examine Annette St. Louis and the failure to call a witness to contradict the finding of Mr. Hathaway, the State's witness, that the weapon found was not the murder weapon. At the hearing on the Petition for Post-Conviction Relief, trial counsel, John F. Cicilline, testified about his reasons for doing neither. Indeed, had he called Mr. Majesky to testify from his original report that the weapon found was the murder weapon, knowing the witness made a subsequent report that he was wrong, that approach might well have been cause for a claim on ineffective assistance of counsel.
From a review of the documents submitted and in consideration of the testimony presented, I find the Petitioner has failed to sustain his burden of proving by a fair preponderance of the evidence that he was denied the due process of law, which he claims, and that he was denied the effective assistance of counsel.
The Petitioner's Application for Post-Conviction Relief is denied.
Counsel for the State shall prepare a Judgment consistent with this decision.