## James F. Simmons *v.* Daniel Brown & Wife.

In an action of the case by the owner and operator of a cotton-mill, driven by water, against the owner of a mill on the same stream, to recover damages for the unlawful raising of a dam across the stream below, and interrupting the operation of the cotton-mill by backwater and thereby diminishing the profits of the plaintiff, evidence of the profits of manufacture, lost by the plaintiff from the interruption, may be submitted to the jury, as a basis upon which to estimate the damages of the plaintiff, if not as the measure of them.

The facts, that in such an action, one of the defendants is the wife of the other, as well as the owner in fee of the land upon which the dam was unlawfully raised, and

that her husband was in possession of the land, do not, as a matter of law, disentitle the plaintiff to a verdict against both, though proper for the jury to consider upon the question of her participation in the unlawful act complained of.

THIS was an action of the case, brought by the plaintiff, as the owner of a water privilege and cotton mill thereon, in Johnston, against the defendants, husband and wife, for erecting a dam across the stream below, on the land of the wife, and thereby casting backwater upon the mill of plaintiff; the declaration claiming damages for the loss of the profits of his manufacture by the plaintiff, during the period of time set forth, in which he was prevented by the obstruction from using his mill. One count in the declaration alleged, that the dam of the defendants had been reduced under a decree of this court, in equity, upon a bill filed against them by the plaintiff; the action being now brought to recover the damages caused by the unlawful raising of the dam.

At the trial of the action, (which was brought originally in this court,) at the September term, 1857, before Brayton, J., with a jury, the plaintiff, to prove his damages, offered under the general issue, amongst other things, to prove the profits which he might have made upon the cotton goods which he could have manufactured at his mill, had it not been for the backwater complained of, and which he was, by the backwater caused by the defendants, prevented from making. This evidence was objected to by the defendants; but notwithstanding, was permitted by the court to pass to the jury, for the purpose of enabling the jury to ascertain the loss and damage which the plaintiff had sustained by means of the injuries complained of in the declaration.

The defendants also requested the court to charge the jury, that Abby Brown, one of the defendants, being owner in fee of the land on which the dam complained of was, but the premises being in the possession of her husband, could not, as a married woman, be liable in this action, and that no verdict could be rendered against her; which charge, the court refused to give.

The defendants having duly excepted at the trial, and a verdict having been rendered against them for $2,500, damages,

now moved for a new trial, on account of the admission of the testimony, and refusal to charge, as aforesaid.

*Payne*, with whom was *R. W. Greene*, for the motion :—

1st. The evidence as to profits was improperly admitted. 2 Parsons on Contracts, 459, note *s*, and cases cited.

2d. No action can be maintained against a married woman for such injuries. 1 Chitty on Plead. 78.

*T. A. Jenckes*, against the motion :—

1st. The evidence upon the subject of profits was properly admitted. 2 Parsons on Contracts, 460, 461 ; *Philadelphia, Wilmington, & Baltimore Railroad Co.* v. *Howard*, 13 How. 307.

2d. The defendant, Abby Brown, was properly made a party ; it having been proved that she expressly authorized the doing of the wrong complained of.

* BRAYTON, J. . The first ground for a new trial, assigned by the defendants is, that the court admitted evidence, to show the profits which the plaintiff might have made upon the goods, which, but for the injuries complained of, he might have manufactured, and which he was prevented from manufacturing, by such injuries.

The action was brought to recover damages caused by the raising, by the defendants, of their dam below the plaintiff's mill ; causing the water to flow upon the plaintiff's wheel, and impeding the operation of his mill ; and the plaintiff claims damages for the loss of profits in the business which he carried on there, of manufacturing cotton goods. The plaintiff's mill was fitted to occupy all the water-power which belonged to the plaintiff, with sufficient machinery for that purpose. By a bill in equity, filed by the plaintiff against the defendants, alleging this nuisance, the right of the defendants to maintain this dam had been in controversy ; and by a decree of the court the dam was reduced to its present height, and this action was brought to recover the damages accrued to the plaintiff before the reduction of the dam, and after the raising of it. In assessing the plaintiff's damages on the trial of the action, the plaintiff was allowed to offer evidence, to show the additional quantity of

---

* The chief justice having been of counsel, did not sit in this case.

goods which the mill was capable of making, and probably would have made, had the wheel been unobstructed by the dam, the value of those goods when made, the cost of making, and the prices which such goods brought in the market, during the time; thus showing the general profit of the business which the plaintiff carried on.

The defendants objected to the admission of this evidence, on the ground, that the plaintiff was not entitled to recover the profits of the business which he might have done with this additional water-power, used by the defendants, but was entitled only to a reasonable and fair rent, for the use of it by the defendants. The objection was overruled; and the question is, whether this evidence was properly admissible.

The plaintiff is to be made good for all the damages which he has suffered from the injurious act of the defendants; and, by the general rule in actions of trespass, for all the damages which result directly and necessarily from the proximate and natural consequences of the act complained of, as distinguished from remote, uncertain, or contingent results. 2 Greenl. on Ev. 256, 261. For this reason, evidence as to profits, as a general rule, is rejected; because, generally, they are uncertain and contingent; depending upon other circumstances than the injurious act of the defendants, and not the natural result of it. Nevertheless, the general rule is subject to many exceptions; and it will be seen from the cases upon this subject, that wherever a loss of profits is the natural and necessary result of the act charged,—such as the party probably would have made, not what by chance he might have made, but what any prudent man must naturally have made,—evidence has been, if not always, most usually admitted as to them.

In actions for breaches of contract, the profits resulting to the plaintiff from the contract which he has entered into and which must naturally come to him if it be performed, are allowed him, as the measure of his damages, if it be broken by the defendants, and he is thereby deprived of them. In *Masterton* v. *Mayor of Brooklyn*, 7 Hill, 61, which was on a contract to furnish marble for the city hall of that city, it was held, that the plaintiff was entitled to recover what he would probably have made if the

contract had been performed, viz : the difference between the cost to him of delivering the marble, and the price which, by the contract, he was to receive.   In this case, Nelson, C. J., says : " When the books speak of profits as too remote and uncertain to be taken into the account in estimating the damages, they have reference, usually, to dependent and collateral engagements entered into in faith of, and in expectation of the execution of the principal contract ; but profits, which are the direct fruit of the contract broken, stand upon a different footing. They are part of the contract itself."   In *Philadelphia, Wilmington, & Baltimore Railroad Co.* v. *Howard,* 13 How. 307, there was a similar contract. It was to furnish certain building materials for the road.   Upon the breach of this contract, it was held, that in estimating the damages, the difference between the contract price and the cost price to the plaintiff, was the measure of damages ; and the court say, " That the profits were the inducement to the contract, the consideration for which the plaintiff contracted on his part, and which are lost by the breach of it by the defendant, and must be made good.   The profits in this case are not only admissible in evidence, but are the measure of damages."

In *McNeill* v. *Reid,* 9 Bing. 68, the contract was, that if the plaintiff would not accept the place of master of a ship in the East India service, for a voyage to India, the defendants would admit him as a partner in a firm, to the extent of one fourth of the profits.   It was held, that the plaintiff was entitled to recover the value of such a voyage to him,—what he would reasonably and probably have realized from it, had he proceeded upon the voyage ; and evidence was offered as to the usual amount realized from such voyages ; and the jury assessed the damages at £500.   The court refused to disturb the verdict. This amount was not allowed however, as the measure of damages; but as Bosanquet, J., said, " as an ingredient for estimating the value set upon the contract by the parties."   In *Waters* v. *Towers,* 20 Eng. L. & Eq. 410, the action was for breach of contract for the non-delivery of certain machinery, within a reasonable time; and special damages were laid, that the plaintiffs had been prevented from completing their contract with a third person, whereby they had lost the profits which they

would have made, had they completed it. Evidence as to this last contract was admitted, and of the advantage to the plaintiff from its performance. It was held, that the evidence as to the profits was properly admitted; and that the jury might assess damages to the amount of them, though they were not bound to do so; and the court said, if reasonable evidence is given that the amount of profits would have been made, if the defendant had performed his contract, the damages may be assessed accordingly; and this, though the second contract was one which could not have been enforced against the plaintiff, on the ground of the statute of frauds.

These cases are all for breaches of contract. In the first two, the profits were not only allowed to be given in evidence, but are made the measure of damages. In the last, though the evidence was held to be properly admitted as the basis for estimating the damages, the profits were not held to be the measure of damages; and it was left to the jury, with this basis, to estimate them. There is nothing in the term " profits," that excludes their being given in evidence, more than any other item of damages; but proof of them is made to depend, like all other proof in relation to damages, upon the fact that the loss of them is the natural and direct result of the injury, and not a remote consequence; and the language of the court, in the last case, is significant : " that if reasonable proof be given that the plaintiff *would have made* the profits, that is, that those profits were the direct result of the performance by the defendant, and the loss the direct result of the breach, it was sufficient to warrant a recovery of them."

There are other cases, not upon contracts, where profits are allowed to be given in evidence. *Tarleton* v. *Mc Gawdy*, Peake, N. P. C. 205, was an action on the case for firing upon negroes, on the coast of Africa, near the trading-post of the plaintiff, by which the negroes were deterred from trading with him, and there was a consequent loss by the plaintiff, of the trade with them. The plaintiff was allowed to recover. Whatever was lost to the plaintiff must have been profits; for upon this, only, depended the value of the trade which he had lost. The value of that trade to him was allowed to be put in evi-

dence. It must have been admitted, on the ground, that the loss of profit and of the trade was the direct and natural result of the unlawful act of the defendant. In *Ingram* v. *Lawson*, 6 Bing. (N. C.) 212, the action was for libel in publishing that the plaintiff's vessel, then fitted and ready for sea, for freight, was unseaworthy, and had been sold to Jews to take out convicts. The plaintiff was allowed to prove the average profits of such a voyage as was broken up ; and upon a motion for a new trial, the court said, that the evidence was not admitted as the measure of damages, but only that the jury might see the nature of the business and the general profits. Coltman, J., said : " The jury must have some mode of estimating the damages ; and they could not be in a condition to do so, unless they knew something of the plaintiff's business and the general return of his voyages." *White* v. *Mosely*, 8 Pick. 356, was an action of trespass for destroying part of plaintiff's mill-dam, and thereby interrupting the use of the plaintiff's mill, whereby he lost the profit of the same. Damages were allowed in this case for diminution of the profits ; and the court say, " the interruption of the use of the mill and diminution of the profit were alleged and proved ; and we think this was right. The plaintiff is entitled to recover for all damages."

In *Williams* v. *Barton*, 13 Louis. 404, the court use this language in relation to contract : " The damages for breach of contract are those which are incidental, and caused by the breach ; and may reasonably be supposed to enter into the contemplation of the parties, at the time of the contract." There does not seem to be any solid ground for departing from the principle which governs breaches of contract in this respect, or suits for damages occasioned by torts. If the damages be such as the party committing might reasonably conclude would result from the act, since every man is presumed to intend the natural and probable result of the act which he designedly commits, there seems no reason to exclude them. There is therefore no ground for excluding profits simply because they are profits ; but the loss of them must be governed by the same rule as other damages. If the loss of them be the direct and necessary result of the defendant's acts, whether by breach of contract

26 *

or tortious act, it can make no difference, the damages are equally proximate and certain, and are no more contingent in the one case than in the other; neither more or less remote.

The evidence objected to, we think, was properly admissible to be weighed by the jury in estimating the plaintiff's damages in this case; and to determine what the plaintiff would have made had he not been prevented by the act of the defendants. No objection is here made to any instruction given to the jury, in reference to their consideration of the evidence submitted.

It is claimed by the defendants, that the mode of estimating the damages; and the only legal mode is, to ascertain the amount of the water-power which is obstructed, and of which the plaintiff is deprived, and to ascertain the fair reasonable rent for so much power, and to make this amount of rent the measure of damages. If this were matter of contract, and the plaintiff were suing for the use, this might be the proper rule. But it is not the purpose of this suit, and cannot be, till the plaintiff chooses to treat the defendant as the rightful occupier of his fall. The plaintiff is the owner of the whole fall, and of the mill, which he himself is operating for profit. He does not wish, and would not consent, to lease any part of it. It would be an injury to his business to do so. To receive merely a fair rent for the power of which he is wrongfully deprived, would not make his business equal to what it would be, to have the power entire; his business being adapted to the use of the whole, mere rent would not make him whole. He cannot be made good without treating him not merely as landlord, but as tenant. As landlord, he is entitled to a fair and reasonable rent. But suppose he were a tenant, paying that reasonable rent, is it sufficient to say, that his rent, as to so much of the power as he cannot use, and for which he is nevertheless bound to pay, shall be paid for him? If this were the rule, we might expect to find much of this compulsory kind of underletting,—hiring water-power against the occupant's will. It is no sufficient answer to say, that further damages are not proximate, or that they are not the natural, probable, direct result of the act.

The defendants' counsel requested the court to charge the jury, that Abby Brown, being a married woman, and the wife

of the other defendant charged, and being owner of the fee of the land upon which the dam was built, and the premises being in the possession of the husband, no action could be maintained against her, and no verdict could be rendered against her. This instruction the court declined to give; and the defendants now move for a new trial for this, as error.

It cannot be material to this point, that the wrongful act was committed on land owned by the defendant, Abby Brown. There is no principle suggested, and certainly none can be found, that should thus change the character of the acts of the defendants. The locality of the act is not that which can impress upon it a wrongful character. It is equally injurious to the plaintiff, whether it be done on the defendants' land, or done upon the plaintiff's. Equally immaterial is it, that the act was done upon land in the possession of the husband; and for the same reason. The locality of the act in these particulars, can have no other effect, at most, than as matter of evidence, of the extent to which the wife participated in the acts of the husband. The question, therefore, which is here made is, whether a married woman can be jointly guilty with her husband of a wrong of this kind; in effect, whether she can be guilty with him of any trespass; for whether the injury arising from it be direct or consequential, cannot be material.

In *Marshes case*, 1 Leon. 312, it was held, that where goods came to the wife alone, and both husband and wife were charged with converting them, the action might be maintained. *Baldwin* v. *Martin*, Owen, 43, was also an action of trover against husband and wife, alleging a conversion by both, to her use, and was held good. In *Berry and wife* v. *Nevys*, Cro. Jac. 661, it was held, that though the joint conversion was well, yet that the conversion must be alleged to be to the use of the husband; since it could not enure to the use of the wife. It was conceded that the action was open to this objection *only*. In *Draper* v. *Fulkes*, Yelv. 165, 166, which was trover against husband and wife, the allegation was, that the goods came to both, and that they converted them. The objection to a recovery in this case was, that it charged a conversion on both, and that a feme covert could not convert; and *Yelverton* an-

swered, and the court allowed, that "the action is grounded not upon property, but possession only; and the point is the conversion; and she may as well be charged, as in trespass or disseisin. *Moorefoot* v. *Chenes and wife*, 2 Ld. Raym. 1395, was *scire facias* against the defendants, as administrators, and alleged the wasting of the goods of the intestate by both; and this point was made, that the wife could not be guilty. It was nevertheless held good; for that the wasting of the estate was a tort; and though a feme covert might not convert, yet she might waste; which was a tort; and this decision was affirmed in the House of Lords.

In *Smalley* v. *Kerfoot and wife & others*, Andrews, 243, the case was, trespass for entering the plaintiff's house and taking his goods, and converting them to their proper use. In this case it was conceded, that the action would well lie against both husband and wife for the trespass. There was a judgment by default, and an assessment of damages. The point made was, upon a motion in arrest of judgment, for that the declaration alleged a conversion to the use of the wife. This case was argued a second time, at the request of the judges; and upon this argument, it was conceded, that for a battery or other personal wrong committed by baron and feme, the wife is liable to an action, as well as the husband, but as to the conversion, it could not be to her use. The point made was overruled, because the conversion was not the gist of the action, but matter of aggravation merely. In *Anon.* 1 Vent. 93, the declaration alleged an assault and battery by both husband and wife, and the husband was found not guilty. There was a motion in arrest of judgment, for that, it being a battery by the wife alone, he should be joined for conformity only; but the motion was overruled. But the general doctrine, as well settled, is stated in Chitty's Pl. 83, that husband and wife may be joined in all actions in which two or more persons may be jointly guilty, and may be charged jointly. This ground for new trial must be also overruled, and there must be

*Judgment upon the verdict.*