**Ronald LACEY et al.**

v.

**EDGEWOOD HOME BUILDERS, INC.**

No. 79–445–Appeal.

Supreme Court of Rhode Island.

June 8, 1982.

Hodosh, Spinella & Angelone, Thomas C. Angelone, Providence, for plaintiffs.

Leroy V. Marcotte, Warwick, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from judgments of the Superior Court in favor of the plaintiffs, who had brought action to

recover from the defendant for violation of implied warranties of habitability. In response to the claims of plaintiffs Richard and RoseMarie DeJoseph (the DeJosephs) and plaintiffs Ronald and Beverly Lacey (the Laceys), jurors rendered a verdict in favor of each set of plaintiffs in the amount of $22,000. In each case, after hearing on the motion for new trial, the Superior Court justice required the plaintiffs to file a remittitur in the amount of $2,660. Both sets of plaintiffs filed such a remittitur, and consequently the motion for new trial was denied. The defendant appeals from the denial of its motion for a new trial and asserts specific objections in respect to evidentiary rulings by the trial justice. The facts underlying the dispute are as follows.

The DeJosephs agreed to purchase their house from defendant in February 1970 for the sum of $21,500. Prior to their occupying the house, they complained to defendant about water entering the basement. By inserting a clause into the contract of sale, the president of defendant corporation agreed to repair cracks in the foundation and add fill to the backyard. This work was performed, but after the DeJosephs moved into the house, more water appeared in the basement. Ultimately the DeJosephs claimed that their garage had shifted, and that resetting of the garage doors was required. Further flooding occurred in the basement, the settling of the house caused doors to bend in their frames, and the bathroom tile floor crumbled. The driveway to the DeJosephs' garage collapsed and sank. The backyard further settled.

The Laceys agreed to purchase their house (which had not yet been constructed) from defendant in 1968 for the sum of $17,000. Before the house was placed on the foundation, the Laceys complained about cracks in that foundation. On February 5, 1969, the president of defendant wrote a guarantee on the back of an envelope stating that no water would leak into the basement and that defendant would repair cracks in the foundation. Although some repairs were made and a sump pump was installed, the Laceys continued to experience flooding and the land behind the house sank visibly. As a consequence, a bow window needed to be replaced, the driveway settled, doors bent or warped, windows stuck, and the garage door became crooked. The defendant maintained that other than the original complaints to which defendant's president had responded, no further complaints were made.

The defendant raises several issues in support of its appeal. The first issue challenges the propriety of the trial justice's allowing an architect-engineer named Yoder to testify concerning the work necessary to repair the dwelling house of each set of plaintiffs and to testify further concerning the cost of such repairs.

 Mr. Yoder testified that he is a structural engineer, a registered architect, a professor at the Rhode Island School of Design, and a registered professional engineer. He further testified that he had received a bachelor's degree in architecture from the Rhode Island School of Design and a master's degree in architectural engineering from the University of Illinois. He had practiced his profession for sixteen years and had participated in the design of a number of very substantial structures. The defendant argues that he should not have been permitted to testify in this case because he was not a "builder" of tract dwelling houses. The defendant concedes that the determination of the competency of an expert to testify is within the discretion of the trial justice and that this discretion will not be disturbed in the absence of clear error or abuse. *Leahey v. State*, R.I., 397 A.2d 509, 510 (1979); *Schenck v. Roger Williams General Hospital*, 119 R.I. 510, 520, 382 A.2d 514, 519 (1977); *Anderson v. Friendship Body and Radiator Works, Inc.*, 112 R.I. 445, 448, 311 A.2d 288, 291 (1973). In the case at bar, the qualifications of the witness both academic and professional were indeed impressive. To suggest that he was incompetent to testify concerning the repairability of a dwelling house is no more persuasive to us than it was to the trial justice. Certainly the sciences of architecture and engineering would give the wit-

ness knowledge beyond the common ken in respect to dwelling houses as well as to a broad variety of other structures. The contention that the trial justice abused his discretion in allowing such testimony borders upon the frivolous under the circumstances of this case.

■ The defendant further argues that the expert's testimony concerning the cost of the repairs should have been stricken in light of the failure to furnish a factual basis for his estimate. An examination of the record indicates that this contention is also without merit since Mr. Yoder did supply a reasonably detailed breakdown of the cost of repair. He set forth the cost of labor, materials, and overhead, including profit in respect to the repairs of both homes. His estimates related to repairing inadequate foundations by the driving of piles and also by the installation of a floating slab. We are of the opinion that the foundation laid by the witness for his cost estimate was adequate to meet the requirements to which allusion was made in *Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 377 A.2d 237 (1977). The refusal to strike this testimony was not error.

The defendant also alleges error in the admission by the trial justice of evidence concerning remedial measures taken by defendant on neighboring property owned by a family named Bianco. The Bianco home and lot were located between the properties owned by the DeJosephs and the Laceys. One of the issues raised by defendant at trial was the contention that plaintiffs did not give it adequate notice of the conditions of which complaint was made in the Superior Court action. The defendant's remedial repairs in the immediate vicinity of plaintiffs' homes would be pertinent to the issue of actual or constructive notice of certain of these conditions.

■ Another issue at trial was the adequacy of the terrain selected by defendant for construction of these houses. Mr. Alfred Meloccaro, defendant's president, had testified that this land had originally been low-lying land that had been filled with gravel prior to the construction of the

dwelling houses. It should also be noted that Mr. Yoder had testified that the site was of such a nature that special arrangements for infrastructure, such as the driving of piles or the installation of a floating slab, were necessary in order to repair the dwellings. As a consequence, one of the points provable in the case was the adequacy of this site for the construction of a house. We have defined relevant evidence as evidence that tends to prove or disprove a point provable in the case. *State v. Barnville*, 445 A.2d 298, 301–02 (R.I., 1982); see *Capezza v. Hertz Equipment Rental Corp.*, 118 R.I. 1, 6–7, 371 A.2d 269, 272 (1977); *McCormick's Handbook of the Law of Evidence* § 185 at 435 (2d ed. Cleary 1972). We have frequently held that the admission or exclusion of evidence on grounds of relevancy is a determination within the discretion of the trial justice. Rulings of admission or exclusion on grounds of relevance will not be considered reversible error in the absence of a finding of abuse of that discretion. *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training and Placement Corp.*, R.I., 413 A.2d 85, 89 (1980); *Soucy v. Martin*, R.I., 402 A.2d 1167, 1170 (1979); *Dixon v. Royal Cab, Inc.*, R.I., 396 A.2d 930, 933 (1979).

■ Applying this standard to the admission of evidence concerning repairs made to the Bianco dwelling and the result of those repairs, we are of the opinion that the trial justice did not abuse his discretion in admitting such evidence.

■ An additional issue raised by defendant is the asserted lack of notice given by plaintiffs concerning the defective conditions that underlay their causes of action. In support of this contention, defendant cites the Uniform Commercial Code, G.L. 1956 (1969 Reenactment) § 6A–2–607. This section contains provisions that require a buyer to notify a seller of any breach incident to goods delivered within a reasonable time after discovery of such breach upon pain of deprivation of remedy. However this section applies to "goods" that are

defined in § 6A–2–105.[1] This definition does not include real estate but obviously refers to personal property.

The doctrine of implied warranty of habitability in the case of a sale of a dwelling by a builder-vendor to an inexperienced vendee was promulgated by this court in *Padula v. J. J. Deb-Cin Homes, Inc.*, 111 R.I. 29, 32–33, 298 A.2d 529, 532 (1973). We did not in that case engraft any requirement of notice to be given by the buyer to the seller of such defects as might be alleged to violate the implied warranty. The defendant argues that lack of notice may be construed as a waiver of the claim. Assuming, without deciding, that this contention may have some merit, we feel it is obvious from the evidence in this case that notice of various defects was given to an officer of defendant. It was further shown that this defendant attempted without success to repair at least some of these defects. For example, there is evidence that Mr. Lacey complained about the leaking of his bow window, about the driveway, and also about the water in his basement. He testified that he had called Mr. Meloccaro fifteen times and "badgered him from July of '69 until '72." There is also evidence that Mr. DeJoseph notified Mr. Meloccaro of the water in his basement and the cracks in the foundation on more than one occasion. Mr. DeJoseph stated that he did not seek further assistance after his initial requests because "they never did anything substantial to correct any problems that we had." We decline to hold that a notice requirement similar to that contained in the Uniform Commercial Code is applicable to sales of real estate. Obviously the rationale for the requirement of reasonably prompt notice of breach of warranty in the sale of goods is that the nature of the goods may often require such notice in order that corrections or remedies may be applied. The acceptance of goods without protest or notice to the contrary will normally be considered between merchants as an implied expression of satisfaction. *See Parrillo v. Giroux Co.*, R.I., 426 A.2d 1313 (1981); *San Antonio v. Warwick Club Ginger Ale Co.*, 104 R.I. 700, 248 A.2d 778 (1968).

In the ordinary course of events, defects such as settling of dwelling houses, warping of doors, or cracks in foundations may not be observable until considerable time has elapsed subsequent to the purchase of the house. We are not inclined to set rigid requirements for notification of such defects. Nevertheless, depending upon circumstances, lack of notice may affect in greater or lesser degree the credibility of a plaintiff's claim. Within this context there was ample evidence of notice to support the credibility of the claims in this case.

It is not entirely clear what relief was requested on the basis of this alleged lack of notice. If this point was urged as a reason for granting a new trial, the trial justice did not err in denying such relief upon this ground.[2]

Although the defendant asserts in its brief that the defendant appeals from the denial of its motion for new trial, other than the issues with which we have previously dealt, no further ground of appeal has been briefed or argued. Consequently, any such grounds are deemed to have been waived. Sup.Ct.R. 16; *see Mercurio v. Fascitelli*, 116 R.I. 237, 354 A.2d 736 (1976); *State v. Jamgochian*, 109 R.I. 46, 280 A.2d 320 (1971); *Clarke v. Sullivan*, 103 R.I. 177, 235 A.2d 668 (1967).

1. General Laws 1956 (1969 Reenacement) § 6A-2-105 reads in pertinent part as follows:
 "(1) 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 8 of title 6A) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (§ 6A-2-107)."

2. Although such a claim might have been a basis for a motion for directed verdict, defendant is not now asserting any error in the denial of a directed verdict by the trial justice. In any event, had such an issue been asserted, we are of the opinion that it would have been without merit.

For the reasons stated, the appeal of the defendant is denied and dismissed, the order of the Superior Court denying a new trial is affirmed, and the papers in the case may be remanded to the Superior Court.

SHEA, J., did not participate.