**ABBEY MEDICAL/ABBEY RENTS, INC.**

v.

**David MIGNACCA and New England Surgical Center, Inc.**

No. 83–303–Appeal.

Supreme Court of Rhode Island.

Jan. 4, 1984.

Robert G. Flanders, Jr./John H. Blish, Edwards & Angell, Providence, for plaintiff.

John D. Biafore, Goldman & Biafore, Providence, for defendants.

## OPINION

MURRAY, Justice.

This is an appeal from a judgment of the Superior Court awarding the plaintiff both monetary and injunctive relief for the defendants' unfair business competition. The trial justice found that the defendant David Mignacca (Mignacca), had abused his position of trust while in the plaintiff's employ by misappropriating the plaintiff's property and soliciting business from the plaintiff's customers with the hope of securing their future patronage.

Judgment was rendered for plaintiff as follows:

Compensatory damages of $12,371.16 were awarded for plaintiff's lost profits and misappropriated property;[1] punitive damages of $15,000 were imposed upon Mignacca for his intentional misappropriation of plaintiff's property; and a two-year injunction was issued restraining both defendants, Mignacca and New England Surgical Center, Inc., their officers, agents, servants, employees, attorneys and all others in active concert or participation with them, from soliciting any business from plaintiff's regular and referral customers.

Following the issuance of the trial justice's restraining order on May 23, 1983, defendants timely petitioned this court for modification and stay of that order upon the ground that it was too broad, encompassing defendants' solicitation of both plaintiff's regular and his referral customers. Said stay was granted in an order of this court dated June 8, 1983 "only as it applies to referral customers."

Both plaintiff and defendants' have filed appeals with this court. The plaintiff moved that our order of June 8, 1983, be vacated. The defendants appeal from that portion of the trial justice's decision (1) admitting into evidence certain exhibits, (2) refusing to grant his motion for dismissal and a new trial, and (3) computing the amount of damages awarded. The relevant facts were ably set out in the trial justice's decision.

The defendant, David Mignacca, was employed by Cranston Surgical Center, Inc., and Cranston Surgical Center, Inc., of Woonsocket for a period of approximately one and one-half years. During that time the stores were owned by his father, Basil Mignacca. The majority of defendant's time was spent in the Woonsocket store. Basil Mignacca sold both of these stores to plaintiff in December of 1981.

In December of 1981, plaintiff, Abbey Medical/Abbey Rents, Inc., purchased substantially all of the assets of Cranston Surgical Center, Inc., and Cranston Surgical Center, Inc., of Woonsocket. Included in the purchase-and-sale agreement were the following items: all of the inventory, the equipment held for rental, all other fixed assets, accounts receivable, contract rights, leased equipment, goodwill, all customer lists, and all other sources of information pertaining to Cranston's and Woonsocket's past, present, and future customers.

As a condition of the purchase-and-sale agreement, Basil Mignacca entered into an employment agreement and a covenant not to compete with plaintiff. Basil remains as a branch manager with supervisory powers over the Cranston and Woonsocket stores. The plaintiff also hired defendant to serve as manager of the Woonsocket store. His duties included the generation of new business, maintenance of present accounts, the supervision of Abbey employees in the Woonsocket store, and general office management. The defendant was not, however, bound by a covenant not to compete with Abbey, nor did he sign an employment contract.

---

1. See the final judgment order in this case dated May 24, 1983. This order correctly totals the dollar amounts representing the two, distinct items specifically found by the trial justice as the basis for his award of compensatory damages.

On December 20, 1982, defendant notified Abbey officials that his last day of employment for Abbey would be December 24, 1982. The defendant then opened his new business, New England Surgical Center, Inc., on January 3, 1983. New England Surgical, like plaintiff, is engaged in the rental and sale of surgical and medical supplies to the general public.

Evidence was introduced at trial that plaintiff maintained business records of its customers who bought or rented equipment. This customer list was compiled by plaintiff's employees for use in servicing individual accounts. It contained specific information, including the customer's name, address, phone number, the type of medical equipment rented or sold, the billing address, and referral sources.

Defendant-Mignacca admitted at trial that this information was readily available only from plaintiff's files. These files were maintained by an employee of plaintiff up until the date Mignacca terminated his employment. On one particular day during his final week of employment with plaintiff, Mignacca spent most of his time at the office copy machine. Mignacca's fellow workers testified that he did not normally spend extended periods of time copying records.

A substantial amount of plaintiff's business involved the sale and rental of TENS units.[2] Records of these transactions were included on plaintiff's customer list.

During his last week, Mignacca contacted one of plaintiff's customers and informed her that he was leaving his position with Abbey to start his own business. The defendant testified that he told this customer he would be willing to supply her when he began his operation. The defendant contacted other Abbey customers and informed them that he would service them in his new business, instructing them to return the equipment they had previously received from Abbey if they intended to do business with him.

Before leaving his employment with plaintiff, defendant contacted Mr. Risio, a salesman for a large medical-equipment supplier, to inquire if he would supply defendant's new business. The defendant also offered a job to one of plaintiff's employees before December 20, 1982.

The defendant used plaintiff's funds to purchase tires for his personal automobile. This action was taken without plaintiff's approval and was effected by defendant's issuance of two separate Abbey checks. (Since defendant was not authorized to issue checks over $500, two checks were necessary to complete this purchase without the approval of his supervisor.)

The defendant removed tools and a refrigerator that belonged to plaintiff from his office upon leaving his employment. Additionally, he gave a free TENS-unit to one of plaintiff's customers.

Two witnesses also testified that defendant explicitly proclaimed his intention to compete vigorously with plaintiff upon terminating his employment. Mr. Jean-Paul Dubois testified to defendant's direction of conspicuous profanity toward plaintiff in describing his future business plans.

■ In a nonjury case a defendant may, at the close of plaintiff's case, move for an involuntary dismissal on the ground that upon the facts and the law plaintiff has not established a right to relief. The trial justice may either determine the case on the record as it then stands or defer judgment until the close of all the evidence. In either event, he sits as the trier of the facts. *William T. Young, Inc. v. Simpson*, 111 R.I. 12, 14, 298 A.2d 526, 528 (1973); *Levy v. Industrial National Bank*, 106 R.I. 437, 260 A.2d 919 (1970). Upon reviewing the trial justice's ruling on defendants' motion under Rule 41(b)(2) of the Superior Court Rules of Civil Procedure, our task is "merely to determine whether his findings are supported by the evidence or whether in

---

2. A TENS unit is a transcutaneous electrical nerve stimulator which sends messages to the brain stimulating nerve fibers to release the body endorphins.

making such findings he misconceived or overlooked any material evidence." *Levy,* 106 R.I. at 446, 260 A.2d at 924.

Our review of the record demonstrates that plaintiff introduced evidence that plainly supported the trial justice's finding in his favor. Evidence adduced at trial concerning Mignacca's discount and give-away sales to specific Abbey customers, his removal of plaintiff's refrigerator and tools from plaintiff's office, his purchase of automobile tires for his own use with plaintiff's funds, and his statements made to Jean-Paul Dubois and Charlie Des-Marais are sufficient to sustain the trial justice's denial of defendants' Rule 41(b)(2) motion. The plaintiff also maintained customer information records which were not readily available from public sources. This fact, when coupled with the inferences flowing from Mignacca's actions in spending most of a full workday at plaintiff's office copy machine during his final week of employment with plaintiff, provides further justification to sustain the trial judge's ruling. All of these acts, taken singly or in combination, reflect a pattern of disloyal conduct and breach of employer confidence that are properly condemned under the rule enunciated in *Rego Displays, Inc. v. Fournier,* 119 R.I. 469, 379 A.2d 1098 (1977). Indeed, this court upon review of the entire record is sorely pressed to specify what further conduct upon the part of a defendant-employee a plaintiff-employer must prove to demonstrate that degree of disloyalty sufficient to avoid defendants' motion under Rule 41(b)(2).

The defendants recognize our further duty under Rule 41(b)(2) to determine whether the trial justice after having made supportable findings applied the correct rule of law. *Levy,* 106 R.I. at 446, 260 A.2d at 924. The defendants argue that the prior holdings of this court in *Colonial Laundries, Inc. v. Henry,* 48 R.I. 332, 138 A. 47 (1927), and *Go-Van Consolidators, Inc. v. Piggy Back Shippers, Inc.,* 111 R.I. 697, 306 A.2d 164 (1973) clearly demonstrate that the trial justice erroneously applied the

proper rule of law. From our reading of those cases, we can discern no such mistake. *Colonial Laundries* announced the general rule that misuse of an employer's confidential customer list by a former employee constitutes unfair business solicitation which may be properly enjoined. *Colonial* defined confidential information to include knowledge of the names of an employer's customers furnished to an employee at the time his employment began. *Colonial* did announce a limited exception to its general rule in which the business activities involved resembled more those of a traveling salesperson than those of a route carrier.

The *Go-Van* case primarily stands for the proposition that the *Colonial* rule will not apply when the identity of an employer's customers is readily ascertainable from ordinary business channels or through business or trade directories. *Go-Van,* 111 R.I. at 700, 306 A.2d at 165.

Consequently, as long as plaintiff demonstrated that Mignacca solicited business from his customers, the identities of whom were not readily available from public channels, and that the nature of plaintiff's business activities were more akin to those of the route driver in *Colonial Laundries* than to those of a traveling salesperson, the trial justice's denial of defendants' Rule 41(b)(2) motion would be a proper application of the law.

Competent testimony was produced at trial that Mignacca contacted customers of plaintiff both prior to and subsequent to his severance of employment on December 24, 1982. Mignacca admitted, and the trial justice specifically found, that the identities of many of plaintiff's customers whom he solicited were not readily available from public sources.

Although conflicting testimony was offered concerning the specific nature of plaintiff's business activities, the weight of the evidence demonstrates that this business involved activities much closer in nature to those of the laundry-route driver in *Colonial* than to those of the traveling

salesperson. Under cross-examination, plaintiff elicited testimony from Mr. Thomas Paulhus, a businessman who had worked for three years in the surgical-supply business. He stated that the development of good customer relations was essential to success in this business and noted that an individual entering this business would be unable to identify which physical therapists would be good referral sources from a simple scanning of the phone book. This is not the type of activity in which a traveling salesperson engages; plaintiff's sales or rentals are not "distinct transaction[s] carrying no implication that another will follow." *Colonial Laundries, Inc. v. Henry,* 48 R.I. at 339, 138 A. at 49–50. The plaintiff's business relationships with its customers, built primarily upon established customer contact, are such that they most likely would have continued absent defendants' interference. For these reasons we affirm the trial justice's denial of defendants' motion for dismissal and uphold his award of injunctive relief.

■ In reviewing the trial justice's denial of defendants' motion for a new trial, our task is different. In a nonjury civil case where the trial judge decides both the law and the facts, he may grant a new trial only if he finds a manifest error of law appearing on the record previously entered or if he is satisfied that the motion is based upon newly discovered evidence which was not available at the first trial and is of sufficient importance to warrant a new trial. *Colvin v. Goldenberg,* 108 R.I. 198, 208, 273 A.2d 663, 669 (1971).

■ In the case before the court, defendants have made no allegation that newly discovered evidence was procured that would warrant reversal. Consequently, defendants' motion for new trial may only be granted if the trial judge committed a manifest error of law in the judgment. Our review of the record categorically reveals no such error.

The principles enunciated in *Rego* and *Colonial Laundries,* when applied to the facts of this case, mandate that defendants' new trial motion be denied.

■ The defendants' next argument is that the trial justice committed error in failing to exclude certain exhibits introduced by plaintiff at trial. Specifically, defendants allege that exhibits No. 15 through 17 (the purchase-and-sale agreement made between plaintiff and Cranston Surgical Center, Inc., and Basil Mignacca; the employment contract entered into between plaintiff and Basil Mignacca; and the agreement not to compete given by Basil Mignacca to plaintiff) should all have been excluded as irrelevant evidence.

We have defined relevant evidence as evidence that tends to prove or disprove a point provable in the case. *Lacey v. Edgewood Home Builders, Inc.,* R.I., 446 A.2d 1017, 1019 (1982); *State v. Barnville,* R.I., 445 A.2d 298, 301–02 (1982); *see Capezza v. Hertz Equipment Rental Corp.,* 118 R.I. 1, 6–7, 371 A.2d 269, 272 (1977). Our rule is that the admission or exclusion of evidence on grounds of relevancy is within the discretion of the trial justice. Rulings of admission or exclusion on grounds of relevance will not be considered reversible error in the absence of a finding of abuse of that discretion. *Lacey,* 446 A.2d at 1019; *Aiello Construction, Inc. v. Nationwide Tractor Trailer Training and Placement Corp.,* R.I., 413 A.2d 85, 89 (1980); *Soucy v. Martin,* 121 R.I. 651, 658, 402 A.2d 1167, 1170 (1979); *Dixon v. Royal Cab, Inc.,* 121 R.I. 110, 116, 396 A.2d 930, 933 (1979).

Applying this standard to the facts of this case, we are of the opinion that the trial justice did not abuse his discretion in admitting these exhibits. All three exhibits made more probable the proof of certain facts necessary for plaintiff to establish defendants' liability, namely, disloyalty under *Rego.*

The defendants' final argument is that the trial justice's computation and award of both compensatory and punitive damages was erroneous.

In reference to the trial justice's award of compensatory damages for plaintiff's lost profits, we find the justification of such action to be firmly rooted in our common law. Lost profits have long been recognized as a proper element of damage in our state in cases of business interruption (*Simmons v. Brown,* 5 R.I. 299 (1858)) and in cases of unlawful discrimination by a public utility in the furnishing of services or facilities. *Main Realty Co. v. Blackstone Valley Gas & Electric Co.,* 59 R.I. 29, 193 A. 879 (1937). More recently, we have embraced Professor McCormick's rule that the basic requirement for the recovery of loss of profit is that such loss be established with reasonable certainty. *Smith Development Corp. v. Bilow Enterprises, Inc.,* 112 R.I. 203, 212, 308 A.2d 477, 482 (1973); McCormick, *Damages* § 26 at 99–100 (1935).

We do not require mathematical certainty in this calculation. *Zuromski v. Lukaszek,* 67 R.I. 66, 69, 20 A.2d 685, 686 (1941). All that is required is that the court be guided by some rational standard. *Smith,* 112 R.I. at 214, 308 A.2d at 483.

In the case at bar, plaintiff produced reliable evidence that its average monthly net income from January 28, 1982, through November 1982 in its Woonsocket store was $3,494.93. Additional financial testimony revealed that the Woonsocket store incurred an operating loss of $6,631 in December 1982, the month of defendant's departure. The trial justice explicitly found that plaintiff suffered lost profits in December 1982 equal in amount to its average monthly net income from January 28, 1982, through November 1982. This finding is entirely consistent with the rule announced in *Zuromski* and we shall not disturb it absent a showing of manifest error. No such showing has been made by defendant.

The defendants' final argument, that punitive damages were improperly imposed by the trial justice, is similarly flawed. Punitive damages, by definition, are not intended to compensate the injured party, but rather to punish the tort-feasor whose wrongful action was intentional or malicious and to deter him and others from similar extreme conduct. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). An award of punitive damages is discretionary with the finder of fact. *Scully v. Matarese,* R.I., 422 A.2d 740, 741 (1980); *Petrone v. Davis,* 118 R.I. 261, 373 A.2d 485 (1977). Whereas the trial justice specifically found that Mignacca had misappropriated plaintiff's property and had breached his duty of loyalty to plaintiff, his award of punitive damages will not be disturbed.

Our final task is to decide whether the plaintiff's motion to vacate our order of June 8, 1983, was properly granted. We decline to dissolve the Superior Court order restraining for two years the defendants, their officers, agents, servants, employees, attorneys and all others in active concert or participation with them, from soliciting any business from the plaintiff's regular customers. For the reasons stated above, our order of June 8, 1983, was vacated and these same individuals shall also be enjoined from soliciting any business from the plaintiff's referral customers.

The defendants' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.