Frances M. VUCCI

v.

**MEYERS BROTHERS PARKING
SYSTEM, INC., et al.**

No. 82–49–Appeal.

Supreme Court of Rhode Island.

June 11, 1985.

Leo T. Connors, Providence, for plaintiff.

Leonard A. Kiernan, Jr., Providence, for Meyers Bros.

Dennis J. Roberts II, David W. Carroll, Roberts Carroll Feldstein & Tucker, Inc., Providence, for American Universal Ins.

Herbert Katz, Pawtucket, for Eugene J. Ferland.

## OPINION

SHEA, Justice.

This is an appeal by the defendant, American Universal Insurance Company, from a final judgment entered as of March 9, 1983, after a jury trial in the Superior Court.

The plaintiff, Frances Vucci (Vucci), brought suit in 1977 seeking recovery for personal injuries sustained in a downtown Providence parking lot when a guardrail against which she was leaning collapsed, causing her to fall some two feet onto a ramp. Vucci was seven months pregnant at the time of the incident. The named defendants were American Universal Insurance Company (American Universal), Meyers Brothers Parking Systems (Meyers), and Eugene J. Ferland, d/b/a Eugene J. Ferland Construction Company (Ferland). In its answer to plaintiff's complaint, American Universal asserted cross-claims for contribution and/or indemnity against Ferland and Meyers. Meyers likewise cross-claimed against American Universal and Ferland. At the close of all of the testimony, Ferland's motion for directed verdict in regard both to the original complaint of Vucci and to the cross-claims of Meyers and American Universal was granted on the ground that he was an improper party to the action.[1] American Universal's motion for directed verdict on the ground that it was not the true party in interest was denied. Vucci's action against American Universal and Meyers was severed from the remaining cross-claims. After trial, the jury returned a verdict in favor of Vucci in the amount of $450,000.

On the question of comparative negligence, American Universal was found 60 percent liable. Both defendants' motions for a new trial were denied, and an appeal followed. On April 29, 1982, this court granted American Universal's motion to remand the case to the Superior Court for compliance with Rule 54(b) of the Superior Court Rules of Civil Procedure. Final judgment was entered for Vucci against American Universal and Meyers as of March 9, 1983. In the interim, Vucci's claim against Meyers was settled for $250,000. American Universal appeals, claiming that the trial justice erred in denying its motion for directed verdict, certain evidentiary rulings and requested instructions, and its motion for new trial. We affirm.

The record reveals that in June 1975 a motorist insured with American Universal collided with and damaged a safety-barrier railing in a Providence parking lot leased and operated by Meyers. The policy covering this claim contained a provision whereby American Universal could elect to "pay for the loss in money or [could] repair or replace the damaged * * * property." The manager of the parking lot, Albert Parrillo (Parrillo), testified that he contacted American Universal about the claim and was instructed by one Stephen Regula (Regula) to obtain an estimate of the damage. Regula, an insurance adjuster employed by Assurer's Services Incorporated (ASI), admitted having had this conversation with Parrillo. ASI, an insurance claims adjusting firm, had an exclusive contract for adjusting with American Universal. Regula testified that he had taken two pictures of the guard barrier after it had been jarred loose, had prepared a report for his file, and had assessed a cost of $17 to effectuate the repair. When Parrillo informed Regula that he had received an estimate of approximately $350 from T & S Construction Company, Regula responded that the estimate was too high and that he would allow no more than $125 to do the repair.

---

1. After suit had been commenced and service of process was accomplished on Eugene J. Ferland, Edward Ferland, his son, was discovered to be the proper party.

Regula then provided Parrillo with the names of three contractors, recommending Edward Ferland (his son-in-law) as one of the three who he felt could complete the work in question. Edward Ferland made the repairs to the damaged railing, having been hired to do so, according to Parrillo, by American Universal.

Ferland testified at trial that he "cleaned out the old holes and all the cement around it, chiseled all [of] them out completely, bore the hole deeper, put new lags in, cemented them in, and bolted the rail back to the lags." Although Ferland conceded that widening the holes at the bottom into a bell shape would have helped prevent the cured cement from pulling out of the hole in one piece, he admitted that he had not done so. Leo Tondreau of T & S Construction Company testified that he would have drilled new holes and relocated the railing had he been awarded the job. After Ferland had completed the repair, Parrillo tested the railing by shaking it, and it seemed sturdy. Parrillo received a draft from American Universal in the amount of $125 made payable to Meyers and Ferland. It was drawn on the account of American Universal and was signed by Regula in the space marked "authorized signature." Regula testified that he was authorized to sign settlement drafts for American Universal. The draft was returned to Regula for delivery to Ferland.

On September 6, 1975, Vucci arrived at Meyers's parking facility to pick up her husband. Upon entering the lot, she was directed by a lot attendant to park her car to one side, next to the railing that had been repaired by Ferland. After getting out of her car, Vucci leaned against the railing, which collapsed, causing her to fall onto a ramp approximately two feet below the surface on which she was standing.

The birth of her child was uncomplicated; however, as a result of the fall, Vucci suffered severe back and leg injuries necessitating repeated hospitalizations and surgery to remove a ruptured disc. Her recovery from a laminectomy was complicated by bouts of phlebitis and a pulmonary embolism requiring hospitalization and continued drug therapy. She was still under the care of doctors at the time of trial in 1981 and had not worked since the accident.

Medical evidence at trial established that Vucci suffered from postlaminectomy backpain syndrome with an empirical disability of 15 percent, increased by the phlebitis and the pulmonary embolism by an amount that could not be quantified.

Vucci testified that she had worked as a waitress until taking maternity leave in June 1975. While so employed, she earned approximately $140 per week, including tips. John F. Fitzgerald (Fitzgerald), an insurance consultant and University of Rhode Island professor, testified as an expert that Vucci's actual lost wages, based on those weekly earnings, totaled $35,754, and that the projected amount for her total future lost wages, assuming fifty-weeks-per-year employment until age sixty-two, was $203,840. Fitzgerald based his computations on Vucci's age at the time of trial, a statistical work-expectancy age of sixty-two, and her earlier testimony about her income.

I

*Directed Verdict*

The decisive issue in this appeal is the denial of American Universal's motion for directed verdict. American Universal argues that there was an absence of evidence of Regula's actual or apparent authority to hire repair persons on its behalf. In the alternative, it argues that the repair person was an independent contractor, which fact precluded, as a matter of law, any finding of liability on the part of American Universal for injuries suffered by Vucci as a result of the repair person's negligence. In such circumstances, the company argues, its motion for directed verdict should have been granted. Because of our resolution of the issue raised by American Universal's first argument, we need not dis-

cuss separately and at length the issue of control.

■ In reviewing the denial of a motion for directed verdict, we shall reverse the trial justice's decision only if our examination of the evidence and all inferences reasonably flowing therefrom, viewed in a light most favorable to the nonmoving party and without consideration of the weight of the evidence or witness credibility, reveals no evidence upon which reasonable minds could differ. *Marcotte v. Harrison,* — R.I. —, —, 443 A.2d 1225, 1229 (1982).

■ On this record, there is considerable conflict concerning the extent of Regula's authority, express or implied, under ASI's contract with American Universal. The resolution of this conflict was critical on the question of American Universal's liability. Regula's response to Parrillo's contact with the insurer, his rejection of the repair estimate and selection of his son-in-law as the repairer, and the issuance of payment to the repairer as well as to the claimant, Meyers, all raise questions of fact that must be resolved by the jury. Moreover, sufficient evidence exists in the record establishing a commonality of corporate identities between American Universal and ASI from which it could reasonably be inferred that ASI was merely an instrumentality of American Universal. Both corporations had many of the same officers and directors, the majority shareholder of American Universal was the sole shareholder of ASI, both companies were housed in the same building, both had the same retirement plan for their respective employees, and both were listed in the same advertisement in the Yellow Pages with the same telephone number. The office of president was occupied by the same person for each corporation. On the basis of this evidence, the trial justice was correct in denying American Universal's motion for directed verdict.

## II
### *Evidentiary Rulings*

American Universal next challenges the admission and exclusion of certain evidence. The settled rule of evidence in this jurisdiction was recently stated in *Abbey Medical/Abbey Rents, Inc. v. Mignacca,* — R.I. —, 471 A.2d 189 (1984).

"We have defined relevant evidence as evidence that tends to prove or disprove a point provable in the case. [Citations omitted.] Our rule is that the admission or exclusion of evidence on grounds of relevancy is within the discretion of the trial justice. Rulings of admission or exclusion on grounds of relevance will not be considered reversible error in the absence of a finding of abuse of that discretion." *Id.* at —, 471 A.2d at 194. Having stated the rule, we shall now address each of the contentions raised by American Universal.

■ The insurer argues that evidence about ASI's apparent authority to act on its own behalf was irrelevant and should have been excluded because Vucci failed to allege or prove that she personally relied upon such apparent authority. We disagree. The absence of personal reliance by a plaintiff does not necessarily preclude her from introducing evidence relating to apparent authority. A trial justice may permit a plaintiff to introduce such evidence when the evidence indicates that a third party relied on the appearance of authority and a plaintiff was injured thereby. *See Soar v. National Football League Players Association,* 438 F.Supp. 337, 342 (D.R.I. 1975); *O'Connor v. Narragansett Electric Co.,* 54 R.I. 317, 322, 172 A. 889, 891 (1934). Therefore, the trial justice was correct in admitting this evidence.

■ American Universal further argues that the trial justice erred in preventing defendant's attorney from eliciting from its witness an interpretation of the insurance contract, thereby barring it from establishing its lack of contractual option to repair the damaged railing. On the con-

trary, it was within the sound discretion of the trial justice to prevent American Universal's attorney from eliciting from its witness an interpretation of the contract's application to the facts of this case. This is particularly so when the language had been read into the record verbatim because the jury was capable of giving that language its plain and ordinary meaning. Furthermore, American Universal's acceptance of the draft for payment that Regula had issued amounted to a ratification of the repair option. American Universal's claim that the admission of this evidence was error is groundless.

American Universal next contends that the presumption of separateness traditionally afforded to related corporations was contravened when the trial court permitted questions and requests that assumed a corporate identity shared by American Universal and ASI. American Universal specifically objected to the trial justice's permitting (1) Vucci's counsel to ask Parrillo "[h]ow Mr. Ferland came to do the work?" and allowing Parrillo to respond that American Universal hired him; (2) Meyer's counsel to request that Regula, an employee of ASI, obtain, if he could over a weekend break, and bring to court with him on Monday an American Universal file, and (3) Meyer's counsel to elicit testimony that two individuals who were corporate officers of ASI in 1975 were also officers of American Universal at the time of trial in 1981 even though only one of these individuals was established by subsequent testimony to have been an officer of American Universal in 1981 as well as in 1975, the year of damage and repair to the railing.

■ In our opinion the trial justice properly exercised his discretion in permitting these questions and requests since the evidence obtained therefrom was probative on the questions of liability and authority in this case.

2. We need not address American Universal's contention that the trial justice erred in failing to instruct the jury to disregard the mere appearance of authority on the part of ASI's claims adjuster since we indicated earlier in this

American Universal also argues that the trial justice erred in permitting expert testimony on the issue of Vucci's future earning capacity since that testimony was based on the uncorroborated assumption that Vucci suffered a total and permanently disabling injury.

■ The doctor's testimony regarding Vucci's injury established that she was disabled at the time of trial and that it was probable that she would remain disabled in the forseeable future. Doctor Peter Pizzarello testified that Vucci had a permanent partial disability of 15 percent. We are of the opinion that the jury was competent to decide whether an apportionment of the expert's future earning figures was appropriate in light of her partial disability. Therefore, the trial justice did not err in permitting this testimony.

### III

### *Instructions to Jury*

■ American Universal contends that the trial justice erred in failing to instruct the jurors adequately about facts that they were required to find before they could pierce ASI's corporate veil.[2] The instruction was that

"there is a fundamental presumption of separateness afforded to corporations and that this fundamental presumption of separateness and distinct personalities shall remain in force unless and until sufficient reason to the contrary has been proven by the parties seeking to disregard the corporate entities such as stock ownership, capitalization, presence in both corporations of same officers and directors, financial support, lack of substantial business contacts save or except the other corporation and domination of finances, policies and practices."

opinion that third-party reliance on the appearance of authority and Vucci's injury thereby made the appearance of authority a factual issue that the jury should consider.

American Universal argues that the last factor (domination of finances, policies, and practices), which the court merely indicated the jury could consider in determining whether to disregard a corporate entity, is actually the factor that the jury generally must find present before it may reach such a conclusion. According to American Universal, since the trial justice's instruction did not even begin to address the element of "domination" that Vucci had to establish before she could avoid ASI's corporate entity, the trial justice failed to charge the jury adequately on this issue of corporate law.

"It is well settled that a trial justice is required to instruct the jury as to the law applicable to the facts as the jury may be warranted in finding them, and his failure to do so, if objection be timely made, constitutes grounds for a new trial. He will not be faulted if the instruction as given states the correct rule of law and substantially conforms to instructions requested." *Ballet Fabrics, Inc. v. Four Dee Realty Co.*, 112 R.I. 612, 621, 314 A.2d 1, 6 (1974).

Jury instructions need not be given in the precise form requested as long as they are clearly stated in substance and are adequately covered in the court's charge to the jury. *Mercurio v. Fascitelli and Fashion Builders, Inc.*, 116 R.I. 237, 241, 354 A.2d 736, 739 (1976).

■■■■ In a circumstance in which two corporations are affiliated through common stock ownership, the separateness of each entity will be respected unless the totality of circumstances surrounding their relationship indicates that one of the corporations " 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of [the other].' " *See United Transit Co. v. Nunes*, 99 R.I. 501, 508–09, 209 A.2d 215, 219 (1965). It is this court's opinion that the instruction was proper because the trial justice sufficiently laid out the totality of circumstances that a jury must consider in order to disregard the corporate entity. Furthermore, since

American Universal failed to carry out its ultimate responsibility to satisfy the railing-repair claim competently, it would be unjust and inequitable to consider it a separate entity. *See Vennerbeck & Clase Co. v. Juergens Jewelry Co.*, 53 R.I. 135, 138–39, 164 A. 509, 510 (1933).

■■■■ American Universal also contends that the trial justice erred in failing to instruct the jury that American Universal could not breach a duty to inspect an independent contractor's repairs in situations in which such repairs were neither visible nor readily ascertainable and no evidence existed that indicated the alleged failure to inspect or supervise in any way contributed to the incident. The trial justice instructed the jury that

"When the work is finished by the contractor and the employer accepted the work, the employer became liable for damages which may thereafter occur from defective conditions. Further, that there is an affirmative duty to inspect the work of an independent contractor by one who employs him; that a failure to either inspect the work or review the manner in which the work is done may constitute a breach of duty that the employer owes."

We are satisfied that this instruction stated the correct rule of law applicable to the facts of this case.

"When the work is finished by the contractor and accepted by the employer, the liability of the former generally ceases, and the employer becomes answerable for damages which may thereafter accrue from defective conditions of the work. * * * [B]y acceptance and subsequent use, the employer assumes to the world the responsibility of [the work's] sufficiency, and as to third parties the liability of the contractor has ceased and that of the employer has commenced." 41 Am.Jur.2d *Independent Contractors* § 36 at 796–97 (1968).

Furthermore, contrary to American Universal's suggestion, it is our opinion that a jury could have determined from the evi-

dence that its failure to inspect or supervise the repairs constituted a breach of its duty.

"An employer may be held liable for failing in his duty to inspect the work which the independent contractor was employed to do. Before acceptance, the employer must see to it that the work as to strength and durability, and all other particulars necessary to the safety of the property and third parties, is subjected to proper tests and that it is sufficient * *." *Id.*

## IV

### *New Trial Motion*

Finally, American Universal contends that the denial of its motion for new trial was error. We disagree.

The record reflects that in ruling on the motion, the trial justice fulfilled his duty by independently considering all of the material evidence in the case in the light of his charge to the jury and by passing on the weight and the credibility of the witnesses. *Barbato v. Epstein,* 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). We will not disturb his determination that there was sufficient credible evidence to support the findings of the jury since our review of the record indicates that he did not overlook or misconceive any evidence and that competent evidence existed to support the verdict. *Rossi v. Hall,* — R.I. —, 430 A.2d 1072, 1073 (1981).

For these reasons, the defendant's appeal is denied, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court for further proceedings.