DECISION
Before the Court are Defendant's motion for a new trial and Plaintiff's objection to same. The case was heard by this Court sitting without a jury on February 7th and 10th, 1994. This motion follows a decision by this Court finding that the Defendant breached its lease with the Plaintiff, thereby causing the Plaintiff to suffer lost profits in the amount of $351,991.00.
It is well-settled that on a motion for a new trial in a nonjury civil case where the trial judge decides both the law and the facts, she may grant a new trial only if she finds a manifest error of law appearing on the record previously entered or if she is satisfied that the motion is based upon newly discovered evidence which was not available at the first trial and is of sufficient importance to warrant a new trial. AbbeyMedical/Abbey Rents, Inc. v. Mignacca, 471 A.2d 189, 194 (1984). In considering such a motion, the trial justice must use her "superior judgment by independently reviewing all material evidence, passing on the weight thereof, and determining the credibility of the witnesses." Barbato v. Epstein, 97 R.I. 191,196 A.2d 836 (1964). In her review of said evidence, the trial justice may disregard testimony containing inherent improbabilities or contradictions or which is totally at variance with undisputed physical facts or law and can also add to the evidence by drawing proper inferences. Turgeon v. Davis,388 A.2d 1172, 1174, 120 R.I. 586, 590 (1978) (quoting Barbato,supra).
After reviewing all of the evidence of record and the testimony presented at trial, this Court denies Defendant's motion for a new trial. It is undisputed that a valid lease, initially between the City of Providence and Blue Ribbon, existed. See Providence Worcester v. Blue Ribbon Beef,463 A.2d 1313 (R.I. 1983)). When Defendant subsequently conveyed the subject property to Providence Worcester, Defendant ceased to perform its obligations to Plaintiff pursuant to the lease and thus breached said lease. In fact, once the Defendant conveyed the subject property to Providence Worcester, Defendant's performance of its obligations pursuant to said lease became literally impossible.
Accordingly, as a result of Defendant's failure to fulfill its lease obligations, this Court found Plaintiff is entitled to damages for lost profits. The Court then examined the evidence to determine whether such lost profits were established with "reasonable certainty," (See Troutbrook Farm, Inc. v. DeWitt,611 A.2d 820 (R.I. 1992)), and whether the Plaintiff, seeking such damages, took reasonable steps to mitigate its losses.(See RESTATEMENT (SECOND) OF PROPERTY. Sec. 10.2, Comment (1)).
After reviewing all the evidence before it, this Court is satisfied that Plaintiff established with reasonable certainty the net lost profits it suffered as a result of Defendant's failure to perform under the lease agreement. The Court had before it two divergent assessments of lost profits. The Court did not accept each report at face value but scrutinized the integrity of each and ultimately discovered flaws. Accordingly, the Court, using the reports in evidence as guidance, independently arrived at the final figures.
Defendant's report from Frank Gesmondi calculated lost profits from the year ending June 30, 1982 as a starting point, thus ignoring the substantial decrease in sales from the year ending 1981 to 1982 wherein sales plummeted from $1,407,800. to $551,000. Although the breach occurred in April 1980, the Plaintiffs have shown no evidence of loss in the years 1980 and 1981, thus indicating to the Court that actual damages accrued beginning in 1982. The Court finds this marked decrease in profits from 1981 to 1982 credible, as Blue Ribbon remained on, and continued to do business from, the subject premises after it was served with the 1980 trespass and ejectment complaint until the building was razed in 1983. During this troublesome period, Plaintiff testified that he was harassed by Providence 
Worcester. Essentially, the Court found reasonable, and thus applied, essentially the same formula for calculating damages as was suggested by the Defendant, with one change: the starting point for computation of lost profits, as Defendant's use of the year ending 1982 figure on which to base lost profits totally ignored the real losses suffered in the year 1982.
With respect to Plaintiff's "Special Report on Lost Profits and Compensation," submitted by Sparrow Company, the Court found this method of computation to be based on speculation. In this report, the projected sales figures were based on Plaintiff's verbal projection and hope that the company would achieve $7,000,000. in sales by 1986 from which a six percent (6%) growth rate was applied. The Court rejected these calculations which emanated from the sheer hope of reaching the "estimated" amount of sales in 1986, instead finding more reasonable and accurate the Defendant's more reliable method of computing projected sales by taking into account the quantity and inflationary indices obtained from the American Meat Institute and the U.S. Department of Labor, respectively, and applying same to the previous years' sales.
Furthermore, this Court is satisfied that plaintiff reasonably mitigated his damages. This Court believes the compelling and credible testimony of Mr. Rossi that during an approximately twelve year period he looked at several, alternate buildings in Providence, which proved to be unsuitable due to their inability to meet federal and state sanitary requirements or their not being physically conducive to operating a profitable meat business. Until the subject building was razed, Mr. Rossi continued to operate from the premises and thereafter relocated the business to his home. Furthermore, the Court finds unpersuasive and unreasonable the notion that Defendant relocate the business in Maine as a method of mitigating damages. Additionally, the company's summary of operations clearly and credibly demonstrates losses in 1983, 1985, 1986, and 1987 relating to the wholesale meat portion of the business. Accordingly, Plaintiff's decision to discontinue that portion of the business was reasonable under the circumstances. This Court found the Plaintiff's attempts to minimize the losses to his company and thus ultimately mitigate his damages both reasonable and sufficient.
In finding that Plaintiff's lost profits were not speculative, this Court additionally considered the past history of Blue Ribbon Beef. This company was not a new company. Therefore, the Court had before it a sufficient "track record" from which to determine that Blue Ribbon, prior to the breach of the lease agreement, had operated successfully and profitably as was reflected by its documented early increased sales and profits. Furthermore, the Court considered the nature of Plaintiff's business, that of "meat operations," which is not a novel, seasonal, or high tech type of business. Additionally, the Court examined the management of the business, including the investment operations of the company, concluding that Plaintiff was a seasoned, capable, hands-on businessman, as well as an experienced wholesale meat dealer, as demonstrated by the company's earnings and profit history.
After reviewing all the evidence of record, including the testimony rendered at trial, this Court finds no manifest error of law or any newly discovered, materially important evidence previously unavailable to the Court which would warrant a new trial. The Court is satisfied that its decision is amply supported by the law and evidence of the case. Accordingly, Defendant's motion for a new trial is denied.
With respect to the prejudgment interest to be added to the judgment, this Court does here amend its previous judgment directing such interest to commence from April 1, 1980. Prejudgment interest is to be calculated from April 30, 1980, the time the cause of action accrued for prejudgment interest purposes.